CASE 8—IN EQUITY—DECEMBER 7.

# Parks v. Smoot, Etc.

**APPEAL FROM BATH CIRCUIT COURT.**

LIS PENDENS—ALIENATION BY HEIR.—An heir, to whom inherited realty had been allotted in partition, conveyed the land by executory contract for a valuable consideration, more than six months after the ancestor's death.  The personal representatives of the decedent subsequently instituted an action to subject the realty to the payment of the ancestor's debts and for a settlement of his estate as insolvent.  Pending the settlement suit the heir conveyed pursuant to his executory contract.  In this controversy between the purchaser and the personal representatives it is held:

First:   That the executory contract constituted an alienation of the estate descended within the meaning of Sec. 2087 of the Kentucky Statutes, providing "When the heir or devisee shall alien, before suit brought, the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation, to the creditors of the decedent or testator; but the estate so aliened shall not be liable to the creditors in the hands of a *bona fide* purchaser for valuable consideration, unless action is instituted within six months after the estate is devised or descended to subject the same," and

Second:   That the purchaser who merely perfected his title by a deed *pendente lite* was not a *lis pendens* purchaser.

W. S. PRYOR AND C. P. CHENAULT, FOR APPELLANT.   (J. S. HURT OF COUNSEL.)

1. On *lis pendens:*   Clarkson v. Morgan, 6 B. M., 441; Park v. Jackson, 11 Wend., 442; Satterfield v. Malone, 1 L. R. A., 35; Clary's Heirs v. Marshall's Heirs, 5 B. M., 266; Hart v. Hayden, 79 Ky., 348; Stone & Warren v. Connelly, 1 Met., 654.

2. On sufficiency of petition. Rodgers v. Rodgers' Admr., 17 Ky. Law Rep., 358; Harlammert v. Moody's Admr., 15 Ky. Law Rep., 839.

HANSON KENNEDY, FOR APPELLEE, BROOKS, WATERFIELD & CO. (R. GUDGELL & SON OF COUNSEL.)

On *lis pendens:* Bennett on Lis Pendens, 153; Leavell v. Poore, .91 Ky., 324; Am. & Eng. Enc. of Law, Vol. 13, pp. 877, 889; Harlammert v. Moody's Admr., 15 Ky. Law Rep., 840; Secs. 429, 430, Civ. Code; Hames v. Orr, 10 Bush, 437; Jones v. McNarrin, 28 Am. Rep., 66; Freeman on Judgments, Vol. 1, Secs. 198, 193; Norris v. Ile, 43 Am. St. Rep., 243; Clarkson v. Morgan, 6 B. M., 441-454; Murray v. Ballou, 1 Johnson's Ch., 577; Bouvier's Law Dict., Vol. 1, 112; Macey v. Fenwick's Admr., 9 Dana, 200; Fenwick's Admr., v. Macey, 2 B. M., 470; Pomeroy's Eq. Jur., Vol. 2, Sec. 633; Gossom v. Donaldson, 18 B. M., 191; Wallace v. Marquett, 88 Ky., 134.

C. W. GOODPASTER, ALSO FOR APPELLEES.

On *lis pendens:* Leavell v. Poore, 13 Ky. Law Rep., 52; Am. & Eng. Enc. of Law, vol. 13, p. 877; Evans v. Miller, 5 Ky. Law Rep., 609; Rothschild's Admr. v. Kohn Bros., &c., 14 Ky. Law Rep., 36; Gibbons v. G. & H. C. T. Co., 14 Bush, 392; Meyer v. Zotel's Admr., 16 Ky. Law Rep., 507, Rodgers v. Rodgers' Admr., 17 Ky. Law Rep., 358.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

W. N. Smoot, a citizen of Bath county, died intestate in September, 1891, leaving a widow and two sons as his only heirs at law. He owned a large landed estate and considerable personal property, and soon after his death, in a proceeding instituted in the county court, dower was alloted to his widow, and the residue of his lands divided between his sons. Deeds were made pursuant to this division, and the parties took possession of their respective shares. One tract of land, containing 218 acres, was allotted and conveyed to the sons jointly, and they so used and occupied it until the 4th day of September, 1893. On that day one of the sons, J. J. Smoot, sold his undivided half interest in this tract of land to the appellant, Parks,

at the price of $50 per acre; the written contract of pur-
chase reciting that $50 was paid cash, and that the bal-
ance of the purchase money was to be paid on the 1st day
of March, 1894, when possession was to be given. By a
subsequent arrangement the balance of the purchase money
was paid on the 17th day of October thereafter, deed ex-
ecuted, and the purchaser put in possession. On Septem-
ber 5, 1893, the day after the contract for the sale of the
land was entered into, J. J. Smoot and J. W. Emmons, the
administrators of W. N. Smoot, instituted a suit for a set-
tlement of the estate, making the heirs and some of the
creditors defendants; stating the amount of the personal
property owned by decedent which had come into their
hands, and describing the real estate. They alleged that
they did not know the amount of the debts due by dece-
dent, and asked a reference to the master commissioner
to ascertain them, and prayed the court, if found necessa-
ry, that enough of the land be sold to pay them. An order
was made pursuant thereto, and the commissioner filed
his report, which made it evident that it would be nec-
essary to sell all the real estate of deceased to pay his
debts. On October 10, 1895, appellees Brooks, Waterfield
& Co., large creditors of W. N. Smoot, deceased, filed their
answer, which they made a cross petition against appel-
lant, Parks, and sought to have subjected to the payment
of their debt the land purchased by him of J. J. Smoot,
on the ground that there was a *lis pendens* against the
land at the time appellant accepted the deed, and paid the
purchase price therefor, on the 17th day of October, 1893.
They further allege that he had knowledge of the penden-
cy of the suit for settlement of the estate of W. N. Smoot,
and was not an innocent purchaser. Appellant answered,
denying all the allegations of appellees' pleading, and al-

[5]

leging that he acquired title by executory contract before the institution of the suit for settlement and that he paid for and accepted the deed to the land without knowing of the institution of the suit by the administrators, and insists that the petition of the administrators did not state facts sufficient to create a *lis pendens* against the land purchased by him.

The proof in the case is undisputed that appellant acted in good faith in the transaction, and that he did not know of the pendency of the suit for settlement when he paid J. J. Smoot for the land, on October 17, 1893. Upon the question of *lis pendens*, Mr. Freeman, in his work on Judgments (volume 1, sec. 198), says: *"Lis pendens* is notice of all facts apparent on the face of the pleading, and of those other facts by which the facts so stated necessarily put a purchaser on inquiry," and the averments of the petition in this case were sufficient to give notice to the public of the purposes of the suit. The main question, therefore, to be considered, is, was the executory contract for the purchase of the land in contest entered into between appellant and J. J. Smoot, one of the heirs at law, on September 4, 1891, an alienation thereof?

Sec. 2087, Ky. Stat., provides that: "When the heir or devisee shall alien, before suit brought, the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation, to the creditors of the decedent or testator; but the estate so aliened shall not be liable to the creditors in the hands of a *bona fide* purchaser for valuable consideration, unless action is instituted within six months after the estate is devised or descended to subject the same." Nearly two years had elapsed after the death of intestate before suit for the settlement of his estate was instituted; the widow and

heirs had, by the county court proceeding, obtained deeds of partition to their shares, and had been in the undisturbed possession thereof for more than eighteen months; and appellant, under his purchase from J. J. Smoot, had been in possession of the land bought by him for nearly a year before he was made a party to the litigation by the cross petition of Brooks, Waterfield & Co.

It is a rule of the common law, that has obtained for centuries, that during the pendency of an equitable suit neither party to the litigation can alienate the property in dispute so as to affect the rights of his opponent; and the doctrine of *lis pendens* applies only when a third person attempts to intrude into a controversy by acquiring an interest in the matter in litigation pending the suit.   See 2 Pom. Eq. Jur. Sec. 663.   But neither the rule nor the reason of the rule applies where a person takes by conveyance prior to the commencement of the suit, without actual notice; and this is true whether the interest be acquired by deed, or only by executory contract.   In Clarkson v. Morgan's Devisees, 6 B. Mon. 444, speaking of this subject, this court said:   "But, if the contract was executory, it could not be overreached or concluded by a subsequent suit against Parker, without giving those who claimed under it a right to be heard.   Nor could the rights of Fowler, or those claiming under him, be concluded, though the contract had been in parol, the same being consummated by a subsequent deed, as was determined by this court in Clary's Heirs v. Marshall, 5 B. Mon. 266.   If a right or interest passed from Parker to Fowler by contract which was obligatory upon the parties, that right or interest can not be overreached or concluded by a subsequent suit against Parker."   And in Parks v. Jackson, 11 Wend. 444 [25 Am. Dec., 656], the Court of Appeals of New York held that:   "A purchaser

of land by contract, who by the terms of the contract has a right to take possession, and has a day for the payment of purchase money, and who accordingly enters into possession, makes valuable improvements, pays the purchase money, and obtains a deed, is not affected by the rule that a conveyance obtained *pendente lite* is void, although such purchase money be paid and deed obtained subsequently to the commencement of the suit in chancery against his vendor to void the title of his vendor as fraudulently obtained, and in which suit à decree is made adjudging the deed of his vendor to be void in law; such purchaser having entered into contract, under which he took possession, previously to the filing of the bill, without actual notice of the fraud of his vendor." This doctrine is abundantly supported by the text writers. Bigelow on Frauds says, in speaking of the doctrine of *lis pendens* (page 301): "This reason, however, has no application to third persons whose interests existed before the suit commenced, and who might have been parties to the suit." Story, Eq. Jur. Sec. 242, says: "Where a contract is made for the sale of land, the vendor is, in equity, immediately deemed a trustee for the vendee of the real estate, and the vendee is deemed the trustee of the vendor for the purchase money. Under such circumstances the vendee is treated as the owner of the land, and it is devisable and descendible as his real estate. On the other hand, the money is treated as the personal property of the vendor, and is subject to a like mode of disposition by him." · So, in Adams, Eq. p. 336, note 1, speaking of *lis pendens*, it is said: "And it applies only to rights or interests acquired from a party after the institution of the suit, and not to the case of a right previously contingent, or conditionally becoming perfect."

And Mr. Pomeroy (Eq., Jur. Sec. 105), discussing equit-

able estates, says: "The most familiar case in this country
is that of the ordinary executory contract for the sale of
land. The law recognizes from this transaction nothing
but 'personal' rights and duties. As long as the agree-
ment remains executory, the vendee acquires no right of
property in the land, nor the vendor in the purchase mon-
ey. Each party has the right, against the other, that the
contract shall be fulfilled according to its terms; but for
the violation of this primary right the only legal remedy
is a pecuniary compensation. The view which equity
takes of the juridical relations resulting from the transac-
tion is widely different. Applying one of its fruitful prin-
ciples (that what ought to be done is regarded as done),
equity says that from the contract, even while yet execu-
tory, the vendee acquires a 'real' right, a right of property
in the land, which, though lacking as a legal *title*, and
therefore equitable only, is none the less real, beneficial
ownership, subject, however, to a lien of the vendor as
security for the purchase price as long as that remains
unpaid. This property in the land, upon the death of the
vendee, descends to his heirs, or passes to his devisees,
and is liable to the dower of his widow. The vendor still
holds the legal title, but only as a trustee, and he in turn
acquires an equitable ownership of the purchase money.
His property, as viewed by equity, is no longer real estate,
in the land, but personal estate, in the price; and, if he
dies before payment, it goes to his administrators, and not
to his heirs. In short, equity regards the two contracting
parties as having changed positions, and the original es-
tate of each as having been 'converted,'—that of the ven-
dee from personal into real property, and that of the ven-
dor from real into personal property. Although these
primary rights which equity thus creates are very differ-

ent from those which the law recognizes, there is still no conflict or antagonism between the two."

No action having been instituted to subject the land in contest to the payment of the debts of the ancestor within six months after the estate descended to the heirs, it is not liable to the demands of creditors, in the hands of a *bona fide* purchaser for a valuable consideration, who was invested with the equitable title and right of possession by an executory contract made prior to the institution of the suit of administrators.   Having acquired the beneficial ownership of the land, a purchaser has the right to perfect his legal title thereto by the payment of the balance of the purchase money and taking deed, unaffected by the rule of *lis pendens;* and we are of the opinion that the court erred in subjecting to the demands of creditors the land purchased by appellant from J. J. Smoot.   For the reasons indicated the judgment is reversed, and the cause remanded for proceedings consistent herewith.