ARTHUR L. ROBERTS v. WILLIAM H. FRIEDELL AND OTHERS.
JOSEPH P. BRENNAN AND OTHERS, APPELLANTS.[1]

July 7, 1944.

No. 33,772.

[1]Reported in 15 N. W. (2d) 496.

*Christensen & Ronken, Dansingburg & Plemling,* and *Desmond B. Hunt,* for appellants.

*George, Owen & Brehmer,* for respondent.

STREISSGUTH, JUSTICE.

Plaintiff, as vendee under a contract for deed to certain hotel property in Rochester, sued for specific performance of the contract by defendants Hiller and Friedell, his vendors, and asked for judgment determining the persons entitled to the unpaid balance of the purchase price, and specifically determining that certain judgments against defendant Friedell, antedating the contract for deed, be declared not to constitute a lien upon the property. Friedell's creditors appeal from a judgment granting plaintiff the relief he asked.

The contract for deed was entered into on June 30, 1941. Defendant Florence Hiller was then the record owner of the property, subject to a mortgage in the sum of $50,000 in favor of Mayo Properties Association, executed by her and her husband, as well as by her father, the defendant Friedell, and his wife. The mortgaged property included not only the hotel property in Mrs. Hiller's name but other real estate owned by Friedell. According to the abstract records, Mrs. Hiller had acquired title to the hotel property from the Olmsted County Bank and Trust Company in February 1941. Plaintiff entered into possession of the premises on July 1, 1941, and has been in continuous possession ever since that time.

On October 15, 1941, defendant Brennan, the holder of a judgment against Friedell entered in the district court of Olmsted county in 1933, filed a notice of *lis pendens* in an action against Mrs. Hiller, Friedell, and others to obtain judgment that Friedell was the actual owner of the hotel property and that Mrs. Hiller held title to it in trust for Friedell's creditors. Besides Brennan, there were numerous other creditors holding judgments against Friedell, dated prior to the date of plaintiff's contract for deed. These creditors were joined as defendants in the action subsequently begun by Brennan. Roberts, however, was intentionally omitted as a defendant.

Having learned of the pendency of the Brennan action, plaintiff's attorney inquired of Brennan's attorney as to the nature of that action. On April 13, 1942, the latter wrote Roberts' attorney: "The case has been tried but no decision has been handed down. There is, of course, no attempt or any inclination to disturb any rights which has [sic] accrued to the Arthur L. Roberts Hotel Company." Between the filing of findings and the formal entry of judgment, Brennan's attorney further assured Roberts' attorney by letter that "we have no inclination and no intention of interfering with anybody's right to this property except that of William H. Friedell, but perhaps we ought to keep each other informed." On August 15, 1942, judgment was entered in the Brennan action that Mrs. Hiller held title to the hotel property in trust for all the creditors of Friedell.

By his contract for deed, Roberts had agreed to pay $50,000 for the hotel property, $5,000 thereof to be paid in cash, $5,000 on or before January 1, 1942, and, in addition thereto, the sum of $600 each month, commencing August 1, 1941, with interest at 4½ percent per annum. The contract contained no express provision that Roberts, as purchaser, was to assume and pay the unpaid balance of the $50,000 mortgage, but he was granted that privilege and right by the following clause: "Parties of the first part hereby direct and authorize party of the second part to pay all of the payments aforementioned to the Mayo Properties Association to be

applied by said Association upon a note and mortgage owing by first parties to said Association and agree that evidence of payment to said Association shall be proof of payment of amounts becoming due under this contract for deed." Roberts in fact made all his payments to the Mayo Properties Association, which in turn applied payments upon the mortgage. Not until November 1, 1942, when an execution upon a judgment of appellants Nowell and Reid was served on Roberts, did he cease making payments. He then owed a principal balance of $32,692.39, less certain amounts paid for taxes. The amount remaining unpaid on the mortgage had been reduced to $27,012.85.

The trial court upon these facts directed judgment (1) that plaintiff, Roberts, be authorized and directed to pay Mayo Properties Association the full balance due on its mortgage; (2) that the balance of the purchase price be paid into court for distribution to such persons as the court might find entitled thereto; (3) that, upon such payment, the defendants Hiller and Friedell, and their spouses, deliver to plaintiff their warranty deed; and (4) that, upon payment and delivery of such deed, judgment be entered that none of the defendants (including Friedell's judgment creditors) has any right, title, interest, or lien in or upon the hotel premises.

Upon the filing of the court's findings, Roberts paid up the mortgage and filed a satisfaction thereof. He also paid into court the balance of $4,475.46 remaining due from him under his contract. Mrs. Hiller and husband and Friedell and wife executed and delivered a warranty deed to Roberts. The creditors, whose combined judgments exceeded $13,000 in amount, refused, however, to accept the $4,475.46 in release of their judgments, insisting that their judgments were valid and subsisting liens against the property in their full amount.

No claim is made that the $50,000 paid by Roberts was an inadequate price and did not represent the fair and reasonable value of the hotel property at the time of its sale to him. No evidence was offered that the real value of the property exceeded the considera-

tion paid by Roberts, so as to render the conveyance to him partially voluntary. See, 24 Am. Jur., Fraudulent Conveyances, § 125. Nor is any claim made, nor could it fairly have been made, that the Mayo mortgage was not *bona fide* and entitled to priority over the judgment creditors.

"* * * A *bona-fide* security upon real estate confers a right in or to the property as irrevocable as a perfect transfer, to the extent necessary to answer the purposes of security, and leaves the property in the grantor, and accessible to his creditors, subject to the lien." Smith v. Conkwright, 28 Minn. 23, 27, 8 N. W. 876, 877.

It was conceded at the oral argument in this court that the proceeds of the Mayo mortgage were used by Friedell and Mrs. Hiller in purchasing the hotel. Yet, the appellants urge that, notwithstanding the written assurances given Roberts to the contrary, they can compel him to pay not only the mortgage but also the full amount of their judgments, even though the combined total far exceeds the price Roberts contracted to pay.

■ Appellants seek to invoke the statutory rule that a judgment is a lien from the date of its docketing "upon all real property in the county then or thereafter owned by the judgment debtor," though title of record is not in him. Minn. St. 1941, § 548.09 (Mason St. 1927, § 9400); 3 Dunnell, Dig. & Supp. § 5068; Emerson-Brantingham Imp. Co. v. Cook, 165 Minn. 198, 206 N. W. 170, 43 A. L. R. 41, and note; Lowe v. Reierson, 201 Minn. 280, 276 N. W. 224. That rule is qualified by Minn. St. 1941, § 501.10 (Mason St. 1927, § 8089), which provides: "No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust." Under that statute, a judgment lien against property not in the name of the judgment debtor is subordinate to the rights of a purchaser under a contract for deed entered into by such purchaser in good faith and for a valuable and adequate consideration. Berryhill v. Potter, 42 Minn. 279, 44 N. W. 251; School District No. 10 v. Peterson, 74 Minn. 122, 76 N. W. 1126, 73 A. S. R.

337; 5 Dunnell, Dig. & Supp. § 8307.  Appellants seek to avoid the effect of § 501.10 by urging that Roberts was not a *bona fide* purchaser for value, and that the court's finding to that effect was erroneous.

■ It may be conceded, without changing the result, that the fact that Friedell was in possession of the hotel when the contract for deed was entered into, coupled with the fact that he joined in the contract as vendor, was sufficient to constitute constructive notice to Roberts of any title or interest of Friedell in the property.  See, Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 A. S. R. 412.  So, it may be conceded that Roberts, not having fully performed his contract for deed when the notice of *lis pendens* was filed in the Brennan action was, as of the date of filing that notice, affected with constructive notice of Friedell's title and put upon his diligence, irrespective of his previous good faith or lack of notice.  But see, Parks v. Smoot, 105 Ky. 63, 48 S. W. 146. Notice, whether constructive or actual, did not, however, dispense with the necessity of establishing, by competent proof, that Friedell in fact did own the property and that Mrs. Hiller held the record title in trust for his creditors.  Such proof is entirely lacking in the record before us.

Roberts was not a party to the action to establish a resulting trust in the property in favor of Friedell's creditors.  The notice of *lis pendens* in that action was not filed until the Roberts contract for deed had been executed and he had entered into possession of the hotel property.  Roberts was deliberately omitted as a party to the Brennan action.  The judgment in that action is, therefore, not binding upon Roberts.  A judgment is not evidence, against a stranger, of the facts on which it is based.  3 Dunnell, Dig. & Supp. § 5156.  The general rule is that where a person was not made a party to an action the judgment or decree entered therein is not binding on him.  In order to make such judgment or decree binding, the rights of the party sought to be bound must have accrued subsequent to the commencement of the action.  34 C. J., Judgments, § 1012, note 10; Doctor Jack Pot Min. Co. v. Marsh (D. C.)

216 F. 261; Chester v. Bakersfield Town Hall Assn. 64 Cal. 42, 27 P. 1104; Leach v. First Nat. Bank, 206 Iowa 265, 217 N. W. 865. To this there is an exception, where the party sought to be bound stood in privity to one who was properly made a party to the action. Hawkeye L. Ins. Co. v. Valley-Des Moines Co. 220 Iowa 556, 561, 260 N. W. 669, 672, 105 A. L. R. 1018. Roberts, however, was not in privity with Mrs. Hiller, for "no one is privy to a judgment whose succession to the rights of property * * * occurred previously to the institution of the suit." Freeman, Judgments (1 ed.) § 162, cited with approval in Dull v. Blackman, 169 U. S. 243, 248, 18 S. Ct. 333, 335, 42 L. ed. 733, 734. So, "a person to whom a party to an action has made an assignment or granted property or an interest therein before the commencement of the action is not regarded as in privity with the assignor or grantor so as to be affected by a judgment rendered against the assignor or grantor in the subsequent action." 30 Am. Jur., Judgments, § 226; Tutt v. Smith, 201 Iowa 107, 204 N. W. 294, 48 A. L. R. 394.

Nor was evidentiary value infused into the judgment against Mrs. Hiller and Friedell by the filing of the notice of *lis pendens* after Roberts had entered into his contract for deed and taken possession of the hotel. The doctrine of *lis pendens* applies only when a third person attempts to intrude into a controversy by acquiring an interest in the matter in litigation pending the suit. See, 2 Pomeroy, Equity Jurisprudence (5 ed.) § 663. But neither the rule nor the reason for it applies where a person takes by conveyance prior to the commencement of the suit, without actual notice; and this is true whether the interest be acquired by deed, or only by executory contract. Parks v. Smoot, 105 Ky. 63, 67, 48 S. W. 146, 147, *supra*. In Clarkson v. Morgan's Devisees, 6 B. Mon. (45 Ky.) 441, 447, speaking of this subject, the court said: "But if the contract was executory, it could not be overreached or concluded by a subsequent suit against Parker, without giving to those who claimed under it a right to be heard."

■ But, failure of proof of the resulting trust aside, there is a more impelling reason why appellants should be denied any relief

in excess of that granted below. We refer to their conduct in inducing Roberts to continue his payments upon the mortgage after the notice of *lis pendens* was filed. With full knowledge of the sale of the hotel to Roberts, they commenced their action for judgment that Mrs. Hiller held the title in trust for Friedell's creditors. They did not join Roberts, grantee of Friedell and Mrs. Hiller, as a party to the action, as is necessary when an alleged fraudulent conveyance is attacked, 24 Am. Jur., Fraudulent Conveyances, § 205; nor did they notify Roberts or the mortgagee of the pendency of the action except constructively by filing the notice of *lis pendens* after Roberts was in possession of the hotel. They permitted Roberts to make a payment of $5,000 on the contract on January 1, 1942, after their notice of *lis pendens* had been filed, and to continue making his monthly payments of $600 without any warning to him of any secret intent to claim priority over him. When Roberts' attorney discovered what was going on, the creditors, through their attorney, twice assured Roberts that they had no intention of disturbing any of his rights or "of interfering with anybody's rights to this property except that of William H. Friedell." In reliance upon such assurances, Roberts continued his monthly payments until November 1942, when one of the creditors levied an execution upon the property. By that time Roberts' payments amounted to $17,307.61, exclusive of interest and an item of $1,383.84 in delinquent taxes, which he paid on November 10, 1942. As we have pointed out, the $50,000 which Roberts agreed to and did pay for the hotel property is not challenged as representing less than its fair and reasonable value.

Appellants must accordingly be held estopped from asserting priority of the lien of their judgments over the rights of Roberts as vendee. The result is not only in accordance with established principles of equitable estoppel, but actually is without damage to appellants. Every dollar of the purchase price in excess of the amount necessary to satisfy the *bona fide* Mayo mortgage was deposited in court for the benefit of Friedell's creditors. Assuming the hotel property to have been Friedell's—a fact which was not

established by competent proof—it cannot be claimed that the property was diverted from the payment of his debts to the injury of his creditors. They were not to any extent damaged or defrauded by the completion of the Roberts purchase. See, Baldwin v. Rogers, 28 Minn. 544, 11 N. W. 77; 24 Am. Jur., Fraudulent Conveyances, § 124. Insofar as Roberts was accountable to Friedell's creditors, he has discharged himself from liability by paying the excess of the purchase price, over the mortgage, into court for their benefit. 24 Am. Jur., Fraudulent Conveyances, § 129.

Every element of an equitable estoppel or estoppel *in pais* is present. The substance of such estoppel is "the reasonable reliance by one party upon the representation of another which will injure the first party if that other is permitted to assert the existence of a state of facts at variance with those represented." Exsted v. Exsted, 202 Minn. 521, 526, 279 N. W. 554, 558, 117 A. L. R. 599; 2 Dunnell, Dig. & Supp. § 3185, *et seq.;* 19 Am. Jur., Estoppel, § 34. "The vital principle is that he who by his language or conduct leads another to do what he could not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Dickerson v. Colgrove, 100 U. S. 578, 580, 25 L. ed. 618, 619. The doctrine is a most flexible one, founded in equity and good conscience, and is a favorite of the law. Its object is to prevent a party from taking an unconscionable advantage of his own wrong while asserting his strict legal rights. 2 Dunnell, Dig. & Supp. § 3186; 2 Herman, Estoppel and Res Judicata, §§ 739, 752. "It accomplishes that which ought to be done between man and man." Dickerson v. Colgrove, *supra.*

"* * * Under the old English decisions," one well-recognized authority explains, "the mere acts, statements and admissions of a party, when not made or performed under seal, or record, * * * were not considered as estoppels, and had no other effect or weight than evidence, more or less strong, but which might be explained or rebutted. But the later decisions in England and America, have given a much broader scope to the doctrine of estoppels *in pais* than they originally possessed, and the law has been established to

be, that whenever an act is done or a statement made by a party, which cannot be contravened or contradicted without fraud on his part and injury to others, whose conduct has been influenced by the act or admission, the character of an estoppel, will attach to what would otherwise be mere matter of evidence and it will become binding * * * even in opposition to proof of a contrary nature." 2 Herman, Estoppel and Res Judicata, § 730.

Lord Campbell's early statement of the rule is peculiarly apt here:

"* * * if a man, either by words or by conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they might have otherwise abstained, he cannot question the legality of the act he has so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct." Cairncross v. Lorimer, 3 Macq. H. L. C. 829.

And see, Pickard v. Sears, 6 A. & E. (Eng.) 469; 2 Herman, Estoppel and Res Judicata, § 733; 2 Dunnell, Dig. & Supp. § 3185.

The statute of frauds, it is true, requires a writing when real estate is in question, and the title to land cannot be transferred, or its assertion precluded, under ordinary circumstances, by an act *in pais* or an oral declaration. Nevertheless, a party may, without writing, so conduct himself with reference to it that he will be estopped from afterward asserting a claim thereto. 2 Herman, Estoppel and Res Judicata, §§ 932, 933. And if, as the authorities uniformly hold, an estoppel may arise in regard to real property "from total but *misleading* silence with knowledge, or passive conduct joined with a duty to speak," Bigelow, Estoppel, p. 648, *a fortiori* it may be created by a letter or series of letters in which all intention to assert a lien against a purchaser is disavowed.

19 Am. Jur., Estoppel, § 87; Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618.

The result below was clearly correct, and the judgment is affirmed.

