OLSEN–FRANKMAN LIVESTOCK
MARKETING SERVICE,
INC., Plaintiff,

v.

CITIZENS NATIONAL BANK of Madelia,
a corporation, and John Keim, d/b/a
John Keim and Sons, Defendants.

Civ. No. 2–75–283.

United States District Court,
D. Minnesota,
Second Division.

May 28, 1980.

Gale Fisher, May, Johnson, Doyle, Becker & Fisher, Sioux Falls, S. D., and Grose, Von Holtum, Von Holtum, Sieben & Schmidt, Worthington, Minn., for plaintiff.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Plaintiff moves for entry of judgment on the basis of *Olsen-Frankman Livestock Marketing Services, Inc. v. Citizens National Bank of Madelia*, 605 F.2d 1082 (8th Cir. 1979). The Court of Appeals for the Eight Circuit in remanding this case held that plaintiff established a claim for damages subject to defenses raised by the defendant bank.

The court finds for plaintiffs in the amount of $28,346.12 plus interest.

This dispute concerns a transaction between plaintiff, Olsen-Frankman, and John Keim & Sons and a subsequent misrepresentation made by the defendant-bank.

Olsen-Frankman is a livestock marketing corporation in Sioux Falls, South Dakota; John Keim and his sons were cattle feedlot operators near Madelia, Minnesota, they operated their business under Keim & Sons and G.M. Grain Co., Inc.; the defendant-bank is a bank in Madelia which loaned money to G.M. Grain Co. and which held a perfected security interest in all cattle owned by the Grain Co.

On July 17, Keim consigned 322 head of cattle to Olsen-Frankman for sale; the sale price was $56,692.25. At the same time, Keim purchased from Olsen-Frankman an additional $49,725.51 worth of cattle to be shipped from North Dakota to Keim's feedlot in Madelia. After that purchase Keim owed Olsen-Frankman slightly over $100,-000. Olsen-Frankman paid for the cattle it purchased immediately and, at the request of Keim, paid with two checks, one of ca. $28,350.00 issued to Keim & Sons and one of a like amount issued to the Grain Company. The checks were presented to the defendant-bank for collection on July 18. On July 21 a representative of the bank traveled to Sioux Falls for purposes of cashing the checks; upon his arrival he called Olsen-Frankman and asked whether the checks would be honored. Frankman indicated that they would be honored and asked whether Keim was in financial trouble.

The bank said no when in fact, as the jury found, the bank knew that Keim was in serious financial trouble. Shortly after that transaction, a petition in bankruptcy was filed against Keim and the Grain Co.

Olsen-Frankman then filed this suit alleging that the bank fraudulently misrepresented the financial condition of Keim. Their theory is, and has been throughout the trial, that had the bank not misrepresented the financial condition of Keim on July 21, 1975, Olsen-Frankman could have stopped payment on both checks before they cleared the bank and having done that, they could have offset the $56,692.00 purchase price of the cattle, against the $100,000 which Keim owed Olsen-Frankman. Olsen-Frankman, in addition, argues that Keim & Sons and the Grain Company were a single entity, thus the check it issued to the Grain Co. should be treated the same as the check issued to Keim & Sons.

The jury found that the bank fraudulently misrepresented the financial condition of Keim; that the bank was a holder but not a holder in due course, that the Grain Company, as opposed to John Keim & Sons, owned the cattle; and that Olsen-Frankman's damages were $56,692.25.

This court, after trial, dismissed the action on grounds that Olsen-Frankman could not assert a set-off of a collateral debt as a defense to the obligation on the check. The Eighth Circuit reversed on that point and held that Olsen-Frankman demonstrated a right to set-off, and therefore a claim for damages, but did so only with respect to the $28,346.12 check issued to Keim, and further held that the right to set-off would be subject to possible defenses by the bank.

This case turns on the element of causation, specifically, did the fraudulent conduct of the bank cause Olsen-Frankman to suffer damages. Throughout the trial, appeal and on remand, the parties treated their rights, obligations and duties as though Olsen-Frankman had stopped payment on the check on July 21, 1975 and the bank were suing to recover on the checks.

In this motion the bank raises two defenses: first, that its perfected security interest in the checks, proceeds of the cattle, was superior to Olsen-Frankman's right to set-off and secondly, that Olsen-Frankman's set-off would have created a voidable preference. In either case, the bank argues, plaintiff's damages were not caused by the bank's conduct.

(a) *Perfected Security Interest*

The bank's theory is that if Olsen-Frankman had stopped payment on the check on July 21, 1975 forcing the bank to sue on the check, the bank would have prevailed because it had a perfected security interest in the checks. Olsen-Frankman does not contest the validity of the conclusion but argues that the bank did not have a perfected security interest in the checks.

The court holds that the bank is estopped from raising its security interest as a shield against its own fraud. Equitable estoppel is a rule of substantive law, *Frye v. Anderson*, 248 Minn. 478, 80 N.W.2d 593 (1957); Minnesota law is therefore applicable. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Busby v. Davis*, 592 F.2d 1241, 1244 (5th Cir. 1979). The purpose of equitable estoppel is to preclude a party from taking advantage of his own wrong, while asserting his strict legal rights. *Roberts v. Friedell*, 218 Minn. 88, 15 N.W.2d 496 (1944); 6 B Dunnels Dig. (3d ed.) § 3186 at 398 (1969); and under Minnesota law the doctrine is favored. *Id.*

In *Roberts, supra*, the creditors of defendant Friedell sought to set aside a conveyance of certain real property from Friedell to his daughter and to have the property placed in trust for the benefit of the creditors. Before that action was filed the daughter had sold the property to plaintiff Roberts. Some of Friedell's creditors, however, had interests in the property which would take priority to those of Roberts. The creditors induced Roberts to refrain from asserting his rights by assuring him that they would not disturb his rights. When the creditors later sought to assert their priority liens over the interests of Roberts, the court held that the creditors were estopped from doing so.

■ The principles of *Roberts* are controlling here. The bank's affirmative fraudulent misrepresentation of the financial condition of Keim & Sons induced Olsen-Frankman to refrain from stopping payment on the check. Just as the creditors in *Roberts* were estopped, so must the bank here be estopped from asserting whatever security interest it may have had in the checks.[1] It is therefore not necessary to address the issues concerning the perfection of the security interest.

### (b) *Voidable Preference*

The bank's second defense is that a stop payment order and set-off by Olsen-Frankman would have created a voidable preference which could have been set aside by the trustee in bankruptcy.

Olsen-Frankman argue that since a debt paid by check is not discharged until the check is finally paid, stopping payment on the check would not have created a voidable preference.

■ A set-off allowed in favor of a debtor of the bankrupt must not only be provable against the estate but must also be allowable under § 57(g) of the Bankruptcy Act. 11 U.S.C. § 108(b). Under section 57(g) the claims of creditors who have received or acquired preferences are not allowable unless the creditor surrenders the preference. 11 U.S.C. § 93(g); 4 Collier on Bankruptcy ¶ 68.09 at 894–95 (14th ed. 1978). The issue here is whether a stop payment order on July 21, 1975 would have created a voidable preference.[2]

A preference is

a transfer . . . of any . . . property . . . to or for the benefit of a creditor for . . . an antecedent debt, made . . . while insolvent and within four months [of] the filing . . . of the petition . . . the effect of which [is] to enable [the] creditor to obtain a greater percentage of his debt than some other creditor of the same class.

11 U.S.C. § 96(a)1. The transfer is voidable if the transferee had reasonable cause to believe that the debtor is insolvent at the time the transfer is made. *Id.* § 96(b).

■ In this case a transfer on July 21, 1975 as a result of a stop payment order could have occurred only if the check is considered to have been transferred into the estate at the time of its delivery on July 17, 1975. The narrow issue then is whether a transfer occurs at the time a check is delivered or at the time it is paid. Though the issue of when a transfer is complete is a

---

1. A collecting bank has a security interest in checks taken for collection. Minn.Stat. § 336.-4–208(3)(c), that security interest "has priority over conflicting perfected security interests in the [checks] . . . ." *Id.* The section 4–208 security interest is a codification and extension of the bank's "common law lien" right of set-off. *Id.* at comment 1. In remanding this case the Court of Appeals for the Eighth Circuit precluded the bank from asserting the interest it had in the check, in its capacity as a collecting bank, apparently because of its fraudulent conduct. It would then be inconsistent to permit the bank to successfully assert an inferior security interest as a defense to its own fraud, merely because the latter interest arose out of a written security agreement.

2. Both parties argue from cases involving a bank's right of set-off. It is well established that a bank which is also a creditor of the bankrupt may set off deposits made in the ordinary cause of business against pre-existing debts owed the bank even though the deposits would otherwise constitute voidable preferences. *New York County Nat'l Bank v. Massey*, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904) (set-off permitted even though deposit made within 4 months); *Fourth National Bank v. Smith*, 240 F. 19 (8th Cir. 1916) (set-off upheld even though bank knew debtor was insolvent and that it would create preference). *See also* 4 Collier on Bankruptcy ¶ 68.16[2] at 915 (14th ed. 1978); 3 part 2 Collier on Bankruptcy ¶ 60.15 at 827 (14th ed. 1978). The theory underlying that line of cases is that a deposit, being withdrawable at will, is merely a change in the form of property and therefore does not constitute a depletion of the estate. *Massey, supra*, 192 U.S. at 147, 24 S.Ct. at 201, and is based on a recognition that denying a bank the right of set off, "would . . . make banks hesit[ant] to honor checks given to third persons, would precipitate bankruptcy, and so interfere with the course of business as to produce evils of serious and far-reaching consequence." *Studley v. Boylston National Bank*, 229 U.S. 523, 529, 33 S.Ct. 806, 809, 57 L.Ed. 1313 (1913). Neither the theory nor purpose of the bank set-off rule apply to ordinary non-banking commercial transactions.

federal question, it must be decided by reference to state law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1965).

▮▮ Under the law of negotiable instruments a check is merely a promise to pay and does not vest in the payee, title to the funds, Minn.Stat. § 336.3–409(1), it is simply an order to the drawee to pay the amount on demand, *Id.* at § 336.3–104, and a promise by the drawer to pay the amount if the bank refuses to do so. *Id.* at § 336.3–413. In *Klein v. Tabatchnick*, 459 F.Supp. 707 (S.D.N.Y.1978) the court held that voiding and returning an unnegotiated check, which was treated as having been issued to the bankrupt, did not constitute a voidable preference. In *Klein* the "creditor" promised to and did issue a $100,000 check to the debtor-bankrupt, the check was voided and returned before bankruptcy and before it had been negotiated. The trustee sought to recover the amount of the check on the theory that voiding the check created a voidable preference. The court rejected the trustee's claim, in part, on the theory that a "transfer" occurs upon payment rather than delivery of the check; since the check was never paid, nothing was transferred to the bankrupt and therefore could not have been transferred out of the estate. The majority rule appears to be that a transfer occurs upon payment rather than delivery of a check. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir. 1974); *Watchmaker v. Barnes*, 259 F. 783 (1st Cir. 1919). *In re Lyon*, 121 F. 723 (2d Cir. 1903); *Sandoz v. Knippers*, 241 F.Supp. 640 (W.D. La.1965). *See also*, 3 Collier on Bankruptcy ¶ 60.14 at 822 (14th ed. 1978); 42 Harv.L. Rev. 950 (1929).[3] *But see, Latrobe v. J. H. Cross Co., Inc.*, 29 F.2d 210 (D.C.Pa.1928) criticized in 42 Harv.L.Rev. 950 (1929). Based on those cases the court holds that a stop payment order on July 21, 1975 would not have created a voidable preference. That, however, does not resolve this case.

Assuming payment on the check had been stopped, the cattle would have been purchased on credit with knowledge of the seller-bankrupt's insolvency and with an intent to set off the purchase price of the cattle against its claim in bankruptcy. Should that transaction have constituted a voidable preference, the trustee could have set it aside and demanded a return of the cattle or their value in money. In that case Olsen-Frankman likewise would have suffered the loss at the hands of the trustee in bankruptcy rather than the bank.

▮ The price of the cattle purchased by Olsen-Frankman was $56,692.25. At the same time Olsen-Frankman sold Keim & Sons $49,725.51 worth of cattle on credit. (Plaintiff's Exhibits Nos. 31, 32, 33). Those cattle were shipped to Keim & Sons. It is well established that a voidable preference must result in a depletion of the estate available for creditors. *Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co.*, 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1912); *DeAngio v. DeAngio*, 554 F.2d 863 (8th Cir. 1977). To the extent that Olsen-Frankman sold cattle to Keim & Sons on credit as part of the same transaction there was no depletion of the estate and therefore no voidable preference. Moreover, even if the sale of cattle to Olsen-Frankman is a voidable preference, Olsen-Frankman would have a right to set-off in the amount of the subsequent extension of credit under section 60(c), 11 U.S.C. § 96(c).

The sale of cattle would, however, constitute a voidable preference in the amount of $6,966.74. That amount represents the difference between the value of cattle purchased by Olsen-Frankman from Keim & Sons and the value of the cattle sold by Olsen-Frankman to Keim & Sons. Permitting a setoff of that amount would be tantamount to permitting the acquisition of a debt for purposes of set-off. Such transac-

---

**3.** The bank here was acting as a collecting bank. (Defendant's Brief in Support of a Motion for Judgment Notwithstanding Verdict or For New Trial at p. 5; Answers to Amended Complaint, Third Affirmative Defense ¶ 8.)

The court is not therefore dealing with the case where the check was renegotiated in payment of a debt. Cf. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945).

tions are prohibited under section 68(b)2. 11 U.S.C. § 108(b)2. *Western Tie & Timber Company v. Brown,* 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905) (dictum); 4 Collier on Bankruptcy ¶ 68.12 at 903 (14th ed. 1978).

■■■ There being no mutual indebtedness, plaintiff would not be entitled to set off the $28,346.13 check issued to G.M. Grain Co. Because of the undue delay and prejudice to defendant, the court would deny a motion by plaintiff to amend the pleadings so as to try the issue of whether the Grain Co. and John Keim & Sons were a single entity. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Plaintiff has had adequate opportunity to raise that issue. Suit was filed in 1975; the complaint was previously amended; and the case has been tried twice. Moreover, the "single entity" issue will require evidence on the manner in which John Keim conducted his day to day business. The record indicates that John Keim can no longer be reached. (Trial transcript, Testimony of David Frankman, Oct. 16, 17, 1978 at 45–47). Thus, to the extent that the evidence is based on testimony of John Keim, defendant would be prejudiced.

For the reasons stated, the clerk is directed to enter judgment for plaintiff in the amount of $28,346.12 plus interest.