STATE OF MINNESOTA

IN SUPREME COURT

A14-1358

Court of Appeals                                                          Anderson, J.
                                                    Took no part, Hudson, Chutich, JJ.

Patrick M. Figgins,

            Appellant,

vs.                                                                Filed:  June 1, 2016
                                                            Office of Appellate Courts
Noah Wilcox, et al.,

            Respondents.

_____

Jerome D. Feriancek, Ryan C. Stutzman, Thibodeau, Johnson & Feriancek, PLLP, Duluth,
Minnesota for appellant.

Stephanie A. Ball, Eric S. Johnson, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth,
Minnesota for respondents.
_____

S Y L L A B U S

    Minnesota Statutes § 513.33 (2014) does not allow a borrower to sue a lender based

on an oral agreement regarding the due date of a payment.

    Affirmed.

O P I N I O N

ANDERSON, Justice

    Appellant Patrick Figgins brought suit against respondent Grand Rapids State Bank

(GRSB) and its CEO, respondent Noah Wilcox, claiming, among other arguments, that

1

Wilcox and GRSB had made misrepresentations and breached an oral agreement regarding the due date of a payment on an outstanding loan. The respondents moved to dismiss on the ground that Minn. Stat. § 513.33 (2014) does not permit these claims. The district court agreed and dismissed the complaint with prejudice. Figgins, on appeal, argues that section 513.33 does not apply to his claims and, to the extent it does, his promissory estoppel claim should survive because promissory estoppel operates as an exception to the statute. We affirm.

I.

Appellant owned and operated a scrapyard in Grand Rapids. In 2009 appellant had several active business and personal loans with GRSB.[1] In late 2009 one of appellant's loans reached maturity, and the terms of the loan required appellant to make a balloon payment. In lieu of making the balloon payment, appellant entered into negotiations with GRSB in order to refinance the loan. What happened next is the subject of the present litigation.

Appellant claims that Respondent Noah Wilcox, the CEO of GRSB, orally told appellant that appellant did not need to make the balloon payment while the parties negotiated refinancing. Appellant and GRSB continued to negotiate refinancing through late 2009 and into early 2010. During that time, appellant did not make the balloon

---

[1] Because this case reaches us on appeal from a dismissal for failure to state a claim, *see* Minn. R. Civ. P. 12.02(e), the factual record is still undeveloped and the facts recited here are drawn from appellant's complaint.

2

payment the loan required. At some point during the negotiations with GRSB, appellant decided to contact other banks in order to obtain additional refinancing offers.

During this time, appellant applied for a business loan at Woodland Bank. As part of the application process, a Woodland Bank employee contacted GRSB to inquire about appellant's payment history with GRSB. Appellant alleges that Wilcox told the Woodland Bank employee that appellant had a poor payment history and indicated that appellant was seriously delinquent on his loans with GRSB. According to appellant, Woodland Bank refused to offer a loan to appellant after speaking with Wilcox. Appellant claims that Wilcox's statements to Woodland Bank were false and that appellant had an excellent payment history and credit score until late 2009. Appellant attributes any delinquency or other negative credit history incurred in or after late 2009 to his reliance on Wilcox's statement that appellant did not need to make the balloon payment on his loan with GRSB.

Because appellant was unable to obtain refinancing from another bank, he refinanced all of his loans with GRSB in early 2010.[2] Appellant claims that his lack of other financing options allowed GRSB to charge above-market interest rates when refinancing his loans. In December 2013 appellant sued GRSB and Wilcox, alleging numerous claims arising out of his transactions with GRSB in 2009 and 2010. The principal argument advanced by appellant was that GRSB and Wilcox made intentional misrepresentations when they told him that he was not required to make the balloon

---

[2]     Appellant refinanced all of his loans with GRSB again in 2012.

3

payment on his loan in late 2009 and early 2010. GRSB counterclaimed, alleging that appellant was seriously delinquent on several loans he had received from GRSB.

GRSB and Wilcox (collectively, "respondents") subsequently brought a motion to dismiss appellant's complaint for failure to state a claim. *See* Minn. R. Civ. P. 12.02(e). Respondents' motion asserted that several of the claims in the complaint were untimely under the statute of limitations or based on statutes that did not create a private cause of action. Appellant voluntarily dismissed those claims, leaving only his claims for misrepresentation, promissory estoppel, and breach of the implied duty of good faith and fair dealing. Respondents' motion argued that these claims were not permitted under Minn. Stat. § 513.33. The district court agreed with GRSB and Wilcox and dismissed appellant's remaining claims with prejudice.[3] The court of appeals affirmed, and we granted review. *See Figgins v. Wilcox*, No. A14-1358, 2015 WL 1880359 (Minn. App. Apr. 27, 2015).

II.

Respondents assert that all of appellant's remaining claims are not allowed under Minn. Stat. § 513.33, subd. 2, which states, "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Section 513.33 was passed in 1985 in response to the farm crisis of the 1980s. *See Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705 (Minn. 1992). As we have explained, "The

---

[3] The district court also granted summary judgment to GRSB on its counterclaims and confirmed that the claims appellant had voluntarily dismissed were to be dismissed with prejudice. These rulings are not before us.

4

farm crisis of the 1980s produced cash-strapped and financially unsophisticated farmers who claimed reliance upon their bank officers' oral promises to renew their loans. Numerous lawsuits arose over the bankers' alleged oral promises. The credit agreement statute was passed to prevent the litigation of such difficult claims." *Id.*

The statute accomplishes its goal by creating a requirement that certain "credit agreements" be in writing. Under section 513.33, a " 'credit agreement' means an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1(1). And "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2.

According to respondents, Wilcox's alleged statement that appellant did not need to make the balloon payment created a "credit agreement" within the meaning of the statute. Because appellant's claims are based on a "credit agreement" that does not meet the writing requirement of section 513.33, respondents conclude the plain words of the statute prohibit appellant's claims. The district court agreed with respondents and dismissed appellant's claims based on the application of section 513.33. The court of appeals affirmed. Appellant urges us to reverse the court of appeals and hold that section 513.33 does not apply to the facts of this case or, even if it does apply, that appellant's promissory estoppel claim survives because claims based on promissory estoppel are exempt from the requirements of the statute.

5

This case presents a question of statutory interpretation. We must determine whether section 513.33 applies here and whether promissory estoppel operates as an exception to the statute. "[T]he interpretation of a statute is a question of law that we review de novo." *Engquist v. Loyas*, 803 N.W.2d 400, 403 (Minn. 2011). "The goal of all statutory interpretation is to 'ascertain and effectuate the intention of the legislature.' " *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (quoting Minn. Stat. § 645.16 (2014)). "When the language of a statute is free from ambiguity, we give effect to the statute's plain language." *Nielsen v. 2003 Honda Accord*, 845 N.W.2d 754, 756 (Minn. 2013). If, however, a statute is reasonably susceptible to more than one interpretation, it is ambiguous and we may resort to canons of construction or legislative history in order to determine the intent of the Legislature. *KSTP-TV v. Ramsey Cty.*, 806 N.W.2d 785, 788 (Minn. 2011); *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006).

## III.

Appellant makes two primary arguments regarding why section 513.33 does not apply to the facts of this case. First, appellant argues that Wilcox's statement did not amount to an "agreement" because it was a unilateral statement without consideration. Second, appellant argues that his claims do not constitute actions "on a credit agreement" under Minn. Stat. § 513.33 because he is seeking damages based on the impact the transaction had on his third-party relationships, rather than seeking enforcement of Wilcox's promise. We address each argument in turn.

A.

We first address appellant's argument that the facts of this case do not demonstrate that the parties reached an "agreement." Section 513.33 defines a "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1(1). Appellant argues that Wilcox's oral statement that appellant did not need to make the balloon payment on his loan is not a "credit agreement" because the parties never "agreed" to anything—Wilcox merely made a unilateral statement. Appellant also notes that he did not provide any consideration for Wilcox's statement and thus the transaction did not create a binding contract. Appellant concludes that the lack of consideration means that no "credit agreement" could be formed because the word "agreement" implies a contract. Respondents counter that the conduct of the parties clearly demonstrates an agreement was reached. They further argue that the statute uses the word "agreement" rather than the word "contract" and, as a result, a court need not find all the formal elements of a contract in order to conclude that a "credit agreement" has been formed.

Contrary to appellant's position, the word "agreement" in section 513.33 has a broader meaning than a fully consummated and legally binding contract. *The American Heritage Dictionary* defines "agreement" as "[a]n arrangement between parties, usually resulting from a discussion, regarding a course of action." *The American Heritage Dictionary of the English Language* 35 (5th ed. 2011). *Black's Law Dictionary* specifically notes that the word "agreement" has a broader meaning than a legally binding contract.

7

*Agreement*, *Black's Law Dictionary* (10th ed. 2014) (" 'The term "agreement," although frequently used as synonymous with the word "contract," is really an expression of greater breadth of meaning and less technicality. . . . In its colloquial sense, the term 'agreement' would include any arrangement between two or more persons intended to affect their relations (whether legal or otherwise) to each other.' " (quoting 2 *Stephen's Commentaries on the Laws of England* 5 (L. Crispin Warmington ed., 21st ed. 1950))).

The Legislature's decision to use "agreement," rather than "contract," shows that the Legislature intended the statute to address a broader set of interactions than those qualifying as enforceable contracts. "When the Legislature's intent is clear from the unambiguous language of a statute, we interpret the statute according to its plain meaning." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 529 (Minn. 2015). The plain meaning of the word "agreement" in section 513.33 is "[a]n arrangement between parties . . . regarding a course of action."[4] *The American Heritage Dictionary* at 35.

Having determined what qualifies as an agreement under section 513.33, we must now decide whether the parties' actions demonstrate that an agreement existed in this case. We conclude that an agreement existed. Appellant claims that Wilcox told him it was unnecessary to make the balloon payment while the parties negotiated refinancing. It is

---

[4] The fact that section 513.33, subdivision 2 requires an *enforceable* credit agreement to "express[] consideration" does not change this analysis. At best, the consideration requirement in subdivision 2 means that a credit agreement cannot be *enforced* unless it satisfies the formal elements of a contract. The requirement that an enforceable credit agreement contain an expression of consideration has no bearing on what is required to create a credit agreement that is *unenforceable* under section 513.33. In fact, the definition of "credit agreement" itself in the statute does not include a consideration requirement. Minn. Stat. § 513.33, subd. 1(1).

undisputed that, following that statement, appellant did not make the balloon payment and the parties did negotiate refinancing options. In fact, appellant's complaint specifically states that he did not make the balloon payment because he was relying on Wilcox's statement. The actions of the parties and the facts as laid out in appellant's complaint clearly show that the parties had reached an arrangement regarding a course of action.

Finally, the agreement between the parties was clearly a "credit agreement" within the meaning of section 513.33. The agreement between appellant and Wilcox was an agreement to "forbear the repayment of money" and it was also a "financial accommodation." Minn. Stat. § 513.33, subd. 1(1). We conclude that section 513.33 applies to the agreement between appellant and GRSB.

B.

Next, we address appellant's argument that his claims are not subject to section 513.33 because he is not seeking to enforce the credit agreement; instead, he is seeking damages for the harm done to his credit score and third-party relationships. Thus, appellant concludes, he is not bringing "an action on a credit agreement" within the meaning of section 513.33, subdivision 2. Appellant did not raise this argument before the court of appeals. More significantly, he also failed to raise the argument when he petitioned our court for review.[5] Because appellant failed to raise the argument both before the court of appeals and in his petition for review, he has forfeited this argument and we decline to

_____

[5] Throughout the litigation, appellant has consistently sought damages for the harm done to his third-party relationships. But appellant did not argue before the court of appeals or in his petition for review that the fact he was seeking damages for the harm done to his third-party relationships meant that he was not bringing "an action on a credit agreement."

9

address it. *See In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) ("Generally, we do not address issues that were not raised in a petition for review"); *In re Minnegasco*, 565 N.W.2d 706, 713 (Minn. 1997) (declining to reach issues not raised in the court of appeals).

Because both of appellant's arguments against the application of section 513.33 to his claims fail, the district court did not err when it applied section 513.33 to appellant's misrepresentation and breach of the duty of good-faith and fair dealing claims and dismissed both of those claims with prejudice.

IV.

Finally, appellant argues that even if section 513.33 applies here, his promissory estoppel claim should survive because promissory estoppel acts as an exception to section 513.33. To support his position, appellant cites *Norwest Bank Minnesota, N.A. v. Midwestern Machinery Co.*, 481 N.W.2d 875 (Minn. App. 1992), *rev. denied* (Minn. May 15, 1992), which exempted a claim of promissory estoppel from section 513.33 because "[a]n agreement may be taken outside the statute of frauds by equitable or promissory estoppel." *Id.* at 880. *Norwest Bank*, a court of appeals decision, has never been explicitly overruled, but other court of appeals decisions have declined to follow its holding and have refused to exempt claims of promissory estoppel from section 513.33. *See, e.g.*, *BankCherokee v. Insignia Dev., LLC*, 779 N.W.2d 896, 903 (Minn. App. 2010); *Greuling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761-62 (Minn. App. 2005); *see also St. Jude Med. S.C., Inc. v. Tormey*, 779 F.3d 894, 901 (8th Cir. 2015) (applying section

10

513.33 to a claim for promissory estoppel); *Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014) (same).

In reaching its holding, the *Norwest Bank* court relied on a principle in our case law that can be traced back as far as 1892 regarding the relationship between the original statute of frauds, Minn. Stat. §§ 513.01-.07 (2014), and the doctrines of promissory and equitable estoppel. *See Bell v. Goodnature*, 50 Minn. 417, 419, 52 N.W. 908, 909 (1892) ("The statute of frauds has not abrogated the doctrine of estoppel *in pais* as applied to purchases of real estate."); *Dimond v. Manheim*, 61 Minn. 178, 181, 63 N.W. 495, 497 (1895); *Roberts v. Friedell*, 218 Minn. 88, 97, 15 N.W.2d 496, 501 (1944); *Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn. 1984). Without explanation, the *Norwest Bank* court extended these decisions to section 513.33, subdivision 2, and held that promissory estoppel operates as an exception to section 513.33.

There is simply no textual basis for creating an exception to section 513.33 for promissory estoppel claims. Section 513.33 does not, in any way, indicate that claims based on promissory estoppel are exempt from its provisions. To the contrary, the statute's plain language speaks in absolute terms and states that a debtor "may not maintain an action on a credit agreement." The argument for adding exceptions not found in the statutory language is particularly weak in light of our explanation in *Herickhoff* that section 513.33 was passed, in large part, to prevent litigation based on oral promises allegedly made by bankers to their customers. *See Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705 (Minn. 1992). A judicially crafted exception to section 513.33 that allows for promissory estoppel claims would substantially undermine the purpose of the statute and

11

would be inconsistent with both the letter and the spirit of the law. Thus, we decline to create such an exception and we overrule *Norwest Bank* to the extent it is inconsistent with our holding here.

Ultimately, the text of section 513.33 is plain, clear, and unambiguous—no action on a credit agreement may be maintained unless the writing requirement is satisfied. The interactions between appellant, GRSB, and Wilcox show that an oral credit agreement existed between the parties. As a result, appellant's promissory estoppel claim does not survive the application of section 513.33, and the district court did not err when it dismissed the claim with prejudice.[6]

Affirmed.

HUDSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[6] We do not decide whether section 513.33 applies to promissory or equitable estoppel when those theories are raised as a *defense* to the enforcement of a credit agreement against a borrower.

12