**JACK FROST, INC., Respondent,**

v.

**ENGINEERED BUILDING COMPONENTS COMPANY, INC., defendant and third-party plaintiff, Respondent.**

**FOLEY FUEL AND LUMBER COMPANY, INC., defendant and third-party plaintiff, Respondent,**

v.

**HYDRO–AIR ENGINEERING, INC., third-party defendant, Appellant.**

**No. 49416.**

Supreme Court of Minnesota.

April 10, 1981.

Gordon Rosenmeier and John E. Simonett, Little Falls, Roger Quinlivan, St. Cloud, for respondent.

Van Eps & Gilmore and Duane Arndt, Minneapolis, for Engineered Bldg. Components Co., Inc.

Gislason & Martin, Edina, for Foley Fuel and Lumber Co., Inc.

Ryan, Ryan, Ebert & Ruttger, Brainerd, for Hydro-Air Engineering, Inc.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Jack Frost, Inc. (Jack Frost), brought this products liability action against defendants Foley Fuel and Lumber Co., Inc. (Foley) and Engineered Building Components, Inc. (EBCO), the retailer and manufacturer of the allegedly defective product. Foley and EBCO impleaded Hydro-Air Engineering, Inc. (Hydro-Air), the designer of the product. Hydro-Air appeals from the trial court's denial of its post-trial motion for judgment notwithstanding the verdict, a new trial, or a reduction of the amount of the judgment entered against it. EBCO seeks review of the trial court's order allowing Foley to recover attorneys fees from EBCO. We affirm in part and reverse in part.

This lawsuit arose out of the collapse of a chicken barn. Jack Frost is a Minnesota corporation engaged in the production and sale of chicken eggs. In furtherance of its business Jack Frost enters into contracts with persons acting as egg producers whereby the egg producers agree to furnish land, buildings, and equipment and to care for the birds and eggs, and Jack Frost agrees to provide the egg producers with birds, feed, and supplies and to pay the egg producers a monthly sum for their services.

When necessary, Jack Frost arranges for the construction of chicken barns on its egg producers' premises. Five such chicken barns are involved in this lawsuit. They were constructed in 1974 by Norman Roshau, a general contractor. Roshau obtained his building supplies from Foley, a retailer of lumber and building supplies doing business in Foley, Minnesota. Roshau provided Foley with specifications for the chicken barns, including the points at which chicken cages were to be hung from the bottom chord of each roof truss. Roshau told Foley's representative that at each of these points the roof truss should be capable of supporting a 600-pound load. Foley ordered the roof trusses from EBCO, a

manufacturer of building components. EBCO manufactured the roof trusses at its Hopkins, Minnesota, plant, using a design supplied by Hydro-Air, and delivered the roof trusses to the construction sites.

On January 29, 1975, the roof trusses of one of the chicken barns collapsed, bringing down the chicken cages and other equipment hung from the roof trusses. To repair the barn, Roshau had to replace the roof trusses and parts of the walls, install a new ceiling, and reinsulate the entire structure. Roshau inspected the four other barns, found in each roof trusses in danger of giving way, and repaired them.

In May 1976, Jack Frost commenced this action against Foley and EBCO.[1] In its complaint Jack Frost alleged that EBCO had been negligent in manufacturing the roof trusses, that Foley had been negligent in selling the roof trusses, that both defendants had breached express and implied warranties of merchantability and of fitness of the goods for the purpose intended, and that both were strictly liable in tort because the roof trusses were defective and unsafe when sold. Foley and EBCO, as third-party plaintiffs, impleaded Hydro-Air as third-party defendant. They demanded indemnity or contribution from Hydro-Air on the ground that their liability to Jack Frost, if any, arose out of Hydro-Air's breach of warranty, negligence, or sale of a defective product.[2] In addition, Foley filed a cross-claim against EBCO for indemnity or contribution.

At the conclusion of an 8-day jury trial, the trial court ruled as a matter of law that (1) Foley was not negligent, (2) EBCO and Jack Frost were negligent, (3) the roof trusses were sold by EBCO and Foley in a defective condition, and (4) in selling the roof trusses Foley and EBCO breached implied warranties of fitness of the goods for the purpose intended. The remaining issues of fact were submitted to the jury pursuant to special interrogatories. The jury found that Hydro-Air was negligent in designing the roof truss and that Jack Frost's loss was caused by its own negligence and that of EBCO and Hydro-Air. The jury apportioned 30% of the causal negligence to Jack Frost, 15% to EBCO, and 55% to Hydro-Air. It further found that Hydro-Air's design for the roof trusses was defective and, as such, a direct cause of Jack Frost's loss. Compensatory damages in the amount of $78,000 were assessed.

The trial court ordered that Jack Frost was entitled to recover from Foley and Hydro-Air the sum of $54,600, representing 70% of the damages assessed by the jury. The trial court further ordered Foley and EBCO entitled to indemnity from Hydro-Air and accordingly held Hydro-Air liable for the entire amount due Jack Frost.

The trial court granted Jack Frost's post-trial motion to have Hydro-Air made a direct party defendant and denied Hydro-Air's motion for judgment notwithstanding the verdict, a new trial, or a reduction in the amount of the damages recoverable by Jack Frost. It allowed Foley to recover attorneys fees and costs of $6,500 from EBCO.

Hydro-Air's appeal presents us with the following questions: (1) whether the trial court was correct in granting Jack Frost's post-trial motion to amend its complaint to make Hydro-Air a direct party defendant; (2) whether the evidence adduced at trial was sufficient to support the jury's findings that Hydro-Air was negligent in designing the roof truss, that the design it produced was defective, and that its negligence caused 55% of Jack Frost's loss; (3) whether the trial court was correct in holding Hydro-Air liable to Jack Frost for 70% of the damages assessed by the jury; and (4) whether a new trial is necessary because of the misconduct of counsel for EBCO.

1. The egg producers on whose property the damaged barns were located assigned their causes of action against Foley and EBCO to Jack Frost.

2. Foley and EBCO also impleaded Norman Roshau as a third-party defendant and sought indemnity or contribution from him on the ground that his negligence had caused Jack Frost's damages. At trial, Jack Frost admitted that Roshau was acting as its agent at all times relevant to the action. Accordingly, the third-party claims against Roshau were dismissed.

■ 1. The trial court did not err in granting Jack Frost's post-trial motion to amend its complaint to make Hydro-Air a direct party defendant. Under Minn.R. Civ.P. 14.01, a plaintiff is permitted to "assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

Rule 15.02 provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The issue of Hydro-Air's liability to Jack Frost on grounds of negligence and strict liability was not raised by Jack Frost's original complaint. Those same grounds, however, provided the basis for Foley's and EBCO's third-party complaints against Hydro-Air for indemnity or contribution. Hydro-Air thus had notice that it would be called to account for negligence and defects in the design that allegedly caused Jack Frost's loss. The allegations made against Hydro-Air in Foley's and EBCO's third-party complaints required the same proof as they would have required if they had been made by Jack Frost in its original complaint. The record shows that Hydro-Air litigated the questions of its negligence and strict liability and during the trial was treated by the trial judge and counsel as a defendant subject to direct liability.[3] The case was submitted to the jury as if Hydro-Air were a direct party defendant, and counsel for Hydro-Air failed to object. Under these circumstances, it is clear to us that Hydro-Air impliedly consented to trial of the issue of its liability to Jack Frost. See Wasik v. Borg, 423 F.2d 44, 46 (2d Cir. 1970).

2. Hydro-Air challenges the jury's findings that it was negligent in designing the roof truss and that its final design was defective. Hydro-Air further contends that even if the finding that it was negligent is upheld, it is entitled to a new trial because the record does not support the jury's apportionment to Hydro-Air of 55% of the causal negligence.

■ In reviewing a jury verdict, our inquiry is limited to the question whether the evidence, when viewed as a whole and in the light most favorable to the prevailing party, reasonably supports the verdict. The apportionment of negligence must be left to the jury except where the evidence is undisputed and the factfinder could come to only one conclusion. *Duchene v. Wolstan*, 258 N.W.2d 601, 605 (Minn.1977). We have concluded that the record in this case discloses a sufficient evidentiary basis for the jury's findings.

A description of the roof truss as it was designed by Hydro-Air is necessary to an understanding of the evidence adduced at trial. The roof truss is comprised of three principal members (chords) joined together in the form of an isosceles triangle with an apex angle of approximately 120°. The chords are braced by six web members connecting the side chords to the bottom chord. "Truss plates" are used to join members together and to aid in distributing stress. A truss plate is a galvanized steel plate with prongs or "teeth" which are inserted into members; the "joints" are the points at which members are joined together. The points at which web members are joined to the bottom chord are "panel points."

The record suggests that errors in the design, construction, and use of the roof trusses combined to cause the damage to the chicken barns. The trial court held Jack Frost negligent as a matter of law on the basis of evidence showing that the aver-

---

**3.** Moreover, we note that Hydro-Air's counsel was unable during oral argument to describe to us how he would have tried the case differently if Hydro-Air had been named a direct party defendant at the outset.

age weight of each suspended load was 737 pounds, 137 pounds more than the weight Jack Frost had specified. EBCO was held negligent as a matter of law on the basis of undisputed evidence that in manufacturing the roof trusses it had placed truss plates incorrectly and had in some instances used a weaker grade of wood for web members than was required by the design.

With respect to Hydro-Air's negligence, Jerome Koskovich, EBCO's expert witness, testified that in his opinion it is good engineering practice for a truss designer to learn how the user of the truss wishes to apply loads to the bottom chord and include specifications for applying loads in the design. Paul Heckman, EBCO's manager, testified that he informed Hydro-Air that the chicken cages were to be hung from the bottom chords at locations 5 inches away from the panel points. Hydro-Air, however, designed the truss in such a way that it was necessary for loads to be suspended from the bottom chord directly at the panel points. Although the final design contains in its upper right-hand corner the note "truss is designed to carry 600 lb. concentrated load at each joint on the bottom chord," the drawing itself provides no specific details concerning the location of the cages or the type of hanger that should be used to suspend them.

Jack Frost hung the chicken cages at locations 5 to 6 inches away from the panel points. This placement resulted in cross-grain tension, the pulling apart of the wood in a direction perpendicular to the grain. The type of hanger Jack Frost used for the cages caused the bottom chords to rotate, thus adding to the cross-grain tension. Both Koskovich and Donald Bopp, Hydro-Air's chief engineer, testified that they believed cross-grain tension caused the damage to the barns. Bopp also testified that the truss would not have been designed as it was if Hydro-Air had known the cages were to be hung 5 to 6 inches away from the panel points. From Heckman's testimony, however, the jury could reasonably have concluded that Hydro-Air had that knowledge.

Examination of the damaged trusses disclosed that many of the joints were in a weakened condition. Several reasons for this were suggested during the trial. Koskovich testified that in his opinion Hydro-Air's design called for truss plates of a size inadequate for the stress level specified. In the barns that were damaged but did not collapse, larger truss plates were used for two of the joints on each truss. Koskovich also said that misplacement of a truss plate can be a significant factor in the weakening of a truss. There was evidence that many truss plates had been improperly placed by EBCO during manufacture of the trusses. The weakened condition of the joints may also have been caused by EBCO's cutting the web members with a double cut rather than a single cut. The double cut left each web member with a smaller area available for insertion of the truss plate teeth than the single cut would have left, with the result that fewer teeth could be inserted at each joint.

The double cut is common in the truss production industry and had been required in previous truss designs produced by Hydro-Air and utilized by EBCO. According to Heckman, EBCO had in fact never manufactured a truss that was similar to the truss in question and required web members cut with single cuts instead of double cuts. Larry Beineke, Hydro-Air's expert witness, testified that the way in which the web members are to be cut should be made clear in a truss design. There was evidence indicating that Hydro-Air's design did not meet this standard: both Heckman and Koskovich testified that they believed the single cut was not as clearly indicated on Hydro-Air's design as it should have been.

From this evidence, the jury could reasonably have concluded that Hydro-Air was negligent in designing the roof truss and that its negligence directly caused Jack Frost's loss. The same evidence reasonably supports the jury's finding that Hydro-Air's final design was defective. Finally, this is clearly not a case in which the jury could have come to only one conclusion in apportioning negligence among the parties. Accordingly, the jury's verdict must be upheld.

3. Hydro-Air next challenges the trial court's determination that Hydro-Air is liable to Jack Frost for 70% of the damages assessed by the jury. The jury apportioned causal negligence among Jack Frost, EBCO and Hydro-Air at 30%, 15% and 55%, respectively.[4] The trial court applied the comparative negligence statute, Minn.Stat. § 604.01 (1976), and concluded that Jack Frost is entitled to recover 70% of the damages. It held Hydro-Air liable to Jack Frost for that amount. On appeal Hydro-Air contends it is liable for no more than 55% of the damages, the portion attributable to its causal negligence. We do not agree with Hydro-Air's contention.

The comparative negligence statute provides, in relevant part:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

Minn.Stat. § 604.01, subd. 1 (1976). Jack Frost's causal negligence was not as great as Hydro-Air's causal negligence. Therefore, Jack Frost can recover damages from Hydro-Air.[5] The extent of Hydro-Air's liability is not affected by the fact that only 55% of the causal negligence was attributed to Hydro-Air. Jack Frost suffered an indivisible injury as a result of its own negligence and that of EBCO and Hydro-Air. Hydro-Air is therefore liable for the entire amount of Jack Frost's damages diminished, as section 604.01, subd. 1, requires, by 30%, the proportion of the causal negligence

attributed to Jack Frost. *See Chille v. Howell,* 34 Wis.2d 491, 149 N.W.2d 600 (1967).

4. Hydro-Air argues that a new trial should be ordered because the jury was unfairly influenced by misconduct of counsel for EBCO during the trial. The claimed misconduct includes allusions to a "cover-up" by Hydro-Air executives and attempts to introduce evidence that counsel for EBCO allegedly knew was inadmissible.

We must affirm the trial court's refusal to order a new trial on this ground. The decision whether to grant a new trial on the basis of misconduct of counsel is generally left to the trial court's discretion. The trial court's decision may be reversed only upon a showing of clear abuse of discretion or if conduct was so prejudicial that it would be unjust to allow the result to stand. *Goblirsch v. Western Land Roller Co.,* 310 Minn. 471, 474, 246 N.W.2d 687, 689 (1976). When the record in this case is viewed as a whole, it cannot be said that the jury could not have reached its verdict without unfair influence. The trial court properly instructed the jury concerning inadmissible evidence. It did not abuse its discretion in refusing to grant Hydro-Air's motion for a new trial.

5. EBCO appeals the trial court's order directing it to pay Foley reasonable attorneys fees in the amount of $6,500. The rule in Minnesota regarding the award of attorneys fees in an indemnity action was first stated in *Fidelity & Casualty Co. v. Northwestern Telephone Exchange Co.,* 140 Minn. 229, 233, 167 N.W. 800, 802 (1918), quoting *Inhabitants of Westfield v. Town of Mayo,* 122 Mass. 100, 23 Am.Rep. 292 (1877):

"If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and ex-

4. The trial court ruled as a matter of law that Foley, the retailer who sold the defective roof trusses to Jack Frost, was not negligent. The trial court held Foley entitled to indemnity against EBCO and Hydro-Air. That holding is not challenged on appeal.

5. EBCO is not liable to Jack Frost in negligence because EBCO's causal negligence was less

than that of Jack Frost. Nor is EBCO strictly liable to Jack Frost in tort. Minn.Stat. § 604.01 (1976) applies to claims based on strict products liability, except where the only negligence of the party seeking to recover was the failure to inspect a product or to guard against defects. *Busch v. Busch Const. Co.,* 262 N.W.2d 377, 393–94 (Minn.1977).

clusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred in such defense." Only in such case is there a right to recover such expenses.

In this case Foley was required to defend against a claim arising out of its own wrongful conduct, the claim that it breached express and implied warranties of merchantability and of fitness of the goods for the purpose intended when it sold Jack Frost defective roof trusses. Breach of warranty has been held a sufficiently independent wrongful act to justify the denial of attorneys fees in an indemnity action. *Sorenson v. Safety Flate, Inc.*, 306 Minn. 300, 306, 235 N.W.2d 848, 852 (1975); *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 97, 179 N.W.2d 64, 73 (1970). Additionally, Foley failed to tender defense of Jack Frost's action to EBCO. Accordingly, the award of attorneys fees to Foley is reversed.

Upon petition for rehearing by EBCO seeking a change in the decision and by Foley for clarification of the opinion, the opinion issued August 29, 1980, is withdrawn and this opinion substituted therefor. The petitions of Foley and EBCO are in all other respects denied. The petition of Hydro-Air for rehearing is also denied.

Affirmed in part, reversed in part and remanded.

OTIS, AMDAHL, and SIMONETT, JJ., took no part in the consideration or decision of this case.