SEAFIRST COMMERCIAL
CORPORATION,
Respondent,

v.

John R. SPEAKMAN, et al.,
Respondents,

George O.R. Carlson, Appellant,

TLC Leasing Corporation, Respondent.

Nos. C6-85-1754, C6-85-1755.

Court of Appeals of Minnesota.

April 1, 1986.

Michael B. Braman St. Paul, for Seafirst Commercial Corp.

Ronald G. Black, Elk River, for respondents.

John R. Speakman, Anoka, pro se.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Transport Leasing Company (TLC) defaulted on a note for $244,687.49 in favor of Seafirst Corporation. Seafirst repossessed the collateral, which consisted of six buses, and proceeded against the guarantors on the note, John R. Speakman, Richard A. Johnson, George O.R. Carlson, and Ralph Dickenson. Seafirst's claims against Dickenson have been resolved in a separate proceeding. The remaining guarantors are appellants in this action, as well as shareholders in TLC.

Seafirst obtained summary judgment against appellants for $182,571.68, representing the balance due on the note, offset by rental receipts for four buses held as collateral and proceeds from the sale of a fifth bus. The judgment included interest and attorney's fees.

Johnson and Speakman moved for amended findings or vacation of the summary judgment order and submitted additional affidavits. Carlson separately moved for amended findings or vacation. The trial court denied the motions and the parties separately appealed, Johnson and

Speakman (C6–85–1755) and Carlson (C6–85–1754). This court consolidated the two appeals. (C6–85–1754) Johnson and Speakman are attorneys and are representing themselves on appeal. They appeal from the grant of summary judgment to respondent. We affirm.

## FACTS

This is an action on the guaranty of a promissory note executed by TLC in favor of Seafirst Commercial Corporation (Seafirst). TLC is a bus-leasing business. Appellant Johnson is the president, Appellant Speakman is the vice president. At the time the note and guarantys at issue were executed, Johnson, Speakman, Carlson, and Dickenson were the sole shareholders of TLC. The $244,687.49 note, executed August 11, 1983, was to cover TLC's operating expenses. The note was secured by a chattel mortgage against six TLC buses. The note provides

> Upon occurrence of any event of default, Secured Party is authorized in its discretion to declare any or all of the indebtedness to be immediately due and payable without demand or notice to Debtor and may exercise any one or more of the rights and remedies granted pursuant to this Agreement or given to a secured party under the Uniform Commercial Code of Minnesota, including without limitation the right to take possession and sell, lease or otherwise dispose of the Collateral.

Appellants personally and unconditionally guaranteed the note. The guaranty contains the following clauses:

> The Guarantor agrees that, in the event of the death, incompetency, dissolution or insolvency of the obligor or the Guarantor for the benefit of creditors, or the institution of any proceeding by or against the obligor or the Guarantor alleging that the obligor or the Guarantor is insolvent or unable to pay debts as they mature and, if such event shall occur at a time when any of the liabilities may not then be due and payable, the Guarantor will upon demand by the Lender pay to the Lender forthwith the full amount which would be payable

hereunder by the Guarantor if all liabilities were then due and payable.

> \* \* \* \* \* \*

> The Lender may, without demand or notice of any kind, at any time when any amount shall be due and payable hereunder by Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as the Lender may from time to time elect, any property, balances, credits, deposits, accounts or moneys of the Guarantor in the possession or control of the Lender for any purpose.

> This guaranty shall be a continuing, absolute and unconditional guaranty and shall remain in full force and effect as to the Guarantor, subject to discontinuance only as follows: The Guarantor, or any person duly authorized and acted on behalf of the Guarantor, may give written notice to the Lender of discontinuance of this guaranty, but no such notice shall be effective in any respect until it is actually received by the Lender and no such notice shall affect or impair the obligations hereunder of the Guarantor with respect to any liabilities existing at the date of receipt of such notice by the Lender or for renewals or extensions of those obligations made after Lender receives Guarantor's notice or any interest thereon or any expenses paid or incurred by the Lender in endeavoring to collect such liabilities, or any part thereof, and in enforcing this guaranty against the Guarantor. Any such notice of discontinuance by or on behalf of a Guarantor shall not affect or impair the obligations hereunder of any other Guarantor.

In the summary judgment action, however, Carlson claims his signature on the guaranty is a forgery. Except for a conclusory statement in his affidavit, Carlson supplied no support for his claim. An opposing party may not rest on mere denials in his affidavit to successfully support his motion. *See* Pielemeyer, *Summary Judgment in Minnesota: A Search for Patterns*, 7 Wm. Mitchell L.Rev. 147, 155 (1981).

In 1983, a dispute arose among TLC's shareholders. As a result, on September 13, 1983, the shareholders executed an agreement. Under that agreement Dickenson and Carlson sold their TLC stock to Johnson and Speakman. The stock sale agreement contains the following language:

Speakman and Johnson agree to indemnify and hold Ralph H. Dickenson and George O.R. Carlson harmless with respect to any claim or loss as the result of the execution of such guarantee, and on the existing guarantee to Seafirst Corporation, and further agree to use their best efforts to obtain the removal of said guarantees on or before September 12, 1985.

Sometime after this agreement was signed, TLC defaulted on the note.

Johnson, Speakman, and Carlson met with James McWilliams, credit manager of Seafirst, on September 10, 1984. They informed McWilliams that TLC might file for protection under Chapter Eleven of the Bankruptcy Act. They told McWilliams TLC wished to sell the buses and liquidate the note. Johnson and Speakman agreed to surrender the buses and assign the leases to Seafirst, who agreed to try to liquidate the buses and apply the proceeds toward the balance due. This agreement was not reduced to writing, nor was a new promissory note executed.

Following Seafirst's repossession of the buses, it leased three of the six buses, sold one bus, and neither leased nor sold the two remaining buses. The rental and sale proceeds were applied to reduce the TLC debt.

Seafirst commenced an action on the note on April 10, 1985, and moved for summary judgment. The trial court granted Seafirst's motion. None of the parties conducted any discovery prior to the hearing on the summary judgment motion.

## ISSUE

Did the trial court err in granting respondent's summary judgment motion?

## ANALYSIS

### Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. "[T]he moving party has the burden of proof and * * * the non-moving party has the benefit of that view of the evidence which is most favorable to him." *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981) (citation omitted). "All doubts and factual inferences must be resolved against the moving party." *Id.* The court's function is not to decide issues of fact, but to determine whether there are fact issues to be tried.

On appeal from summary judgment, this court's function is to determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

### Claims of Johnson and Speakman

Appellant presented additional affidavits after the order for summary judgment was filed and moved for relief under Minn.R. Civ.P. 60.02 alleging newly discovered evidence. Respondent argues that we cannot review these affidavits on appeal. We do not agree. Appellants appealed from the summary judgment order entered June 18, 1985. The subsequent order denying appellant's motion for vacation is reviewable under Minn.R.Civ.App.P. 103.04 as an order "involving the merits or affecting the judgment" appealed from. All evidence considered by the court in considering the motion for amended findings or vacation are, thus, reviewable by this court.

The supplemental affidavits, submitted on appellants' rule 60.02 motion, do not contain any newly discovered evidence. Rather, these affidavits "flesh out" the previous affidavit submitted to the court. The court properly affirmed its grant of

summary judgment following appellant's motion.

In their answer to Seafirst's complaint, Johnson and Speakman counterclaimed based on estoppel, fraud, and negligent care of the collateral. Their pleadings state

> That plaintiff herein solicited and obtained possession of the collateral in which Plaintiff held a security interest to insure the repayment of the amount of the note herein based on its representation that the collateral would be liquidated and the amounts received therefrom applied to the sum due on the note herein prior to commencement of any proceeding against Defendants, Richard A. Johnson and John R. Speakman, or the guarantors on said note. * * * That Plaintiff is estopped * * * from proceeding with this action.

The fraud allegation stated that respondents fraudulently obtained the collateral based on representations "by knowingly and falsely representing their intention" to sell the buses and offset the debt with the proceeds, and causing damage to appellants. The negligence allegation states that respondent

> conducted itself with respect to such assets negligently, carelessly, and recklessly and has done or failed to do things, the nature and extent of which are unknown to defendants at this time, and to the damage of Defendants in an amount which Defendants are unable to ascertain, but which will be proven at trial hereon.

Respondent does not dispute the facts in this matter. It argues that, given these allegations, appellant is not entitled to prevail as a matter of law.

Respondent argues that appellants cannot rely on conclusory statements made in their pleadings but must, under Minn.R. Civ.P. 56.05, present specific facts to support their allegations:

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts

showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See Erickson v. General United Life Insurance Co.*, 256 N.W.2d 255, 258–9 (Minn. 1977); *Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn.1978).

We agree with respondent that the estoppel, fraud, and negligence claims raised in appellant's answer do not present specific facts showing that there is a genuine issue for trial. Turning to the affidavit accompanying appellant's motion in opposition to respondents' summary judgment, appellants essentially restated the allegations listed in their answer.

> That upon default by said corporation, Plaintiff did obtain possession by voluntary surrender of the collateral securing payment thereof on September 10, 1984. That said possession was obtained by promises and representations to your affiant, and to the President of said corporation, Richard A. Johnson, who is also a Guarantor herein.

> That the promises and representations included, but were not limited to, Plaintiff's representation by and through its employee and agent, James McWilliams, that they were possessed of the ability to advantageously care for and liquidate the collateral. That they would proceed in a prompt and prudent manner to liquidate the collateral to the maximum advantage to the debtor and its Guarantors. That in return for their cooperation, recovery would be sought from the Guarantors to the extent of any deficiency remaining, and it was anticipated by all that there would in fact be no deficiency.

> That upon obtaining the right to possession, Plaintiff did not proceed in a reasonable and prudent manner. They allowed the equipment to deteriorate, to be damaged and nearly destroyed.

> That Plaintiff's conduct has materially diminished and compromised the value of said security.

These statements are insufficient, as a matter of law, to raise estoppel, fraud, and negligence, because they do not allege the specific elements of each cause of action.

The gist of appellants' claim is that respondent is not entitled to possession of the collateral. Appellant is incorrect.

Minn.Stat. § 336.9–503 (1984) states:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 336.-9–504.

By appellants' own account, TLC voluntarily surrendered the collateral following its default. Under the promissory note Seafirst was entitled to repossession. Under the guaranty it was entitled to proceed against appellants on TLC's default. The discussion described by appellants in their pleading, affidavit, and supplemental affidavits does not constitute an agreement that would relieve them of their obligation as guarantors by estoppel, fraud, or negligence. Seafirst had a contractual right, under the note and security agreement, and a statutory right to repossess the collateral.

Appellants claim respondents are estopped from proceeding against them.

[H]e who by his language or conduct leads another to do what he could not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.

*Roberts v. Friedell*, 218 Minn. 88, 96, 15 N.W.2d 496, 500 (1944) (citations omitted). Their claim that respondents induced them to voluntarily surrender the collateral by agreeing to offset the balance due with proceeds from the sale of the buses, cannot stand under scrutiny, given that respondents had a legal right to repossess the buses.

Minn.R.Civ.P. 9.02 requires that in averments of fraud, "the circumstances shall be stated with particularity." While Rule 9.02 does not specify what constitutes sufficient particularity, the Minnesota Supreme Court has held that all elements of a fraud cause of action must be pleaded. *See Alho v. Sterling*, 266 Minn. 71, 122 N.W.2d 869 (1963); *In Re Estate and Guardianship of Williams*, 254 Minn. 272, 95 N.W.2d 91 (1959). *Slezak v. Ousdigian*, 260 Minn. 303, 306, 110 N.W.2d 1, 4 (1961) (overruled on different grounds in *Christensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740, 745 (Minn.1983)) states, "Rule 9.02 of Rules of Civil Procedure specifically requires that the circumstances constituting fraud must be stated with particularity in a complaint to state a cause of action based on fraud."

One element of fraud is damages. *Id.* We hold appellants did not plead damages with sufficient particularity. The claimed damage results from respondent's repossession of the collateral. Since respondent has legal right of ownership in the collateral under the promissory note, appellant's claim of damage cannot stand. Appellants' affidavits do not provide any other showing of damages sufficient to satisfy rule 9.02. The extent of appellant's damages claim in their affidavit is,

That upon obtaining the right to possession, Plaintiff did not proceed in a reasonable and prudent manner. They allowed the equipment to deteriorate, to be damaged and nearly destroyed.

Appellant Johnson stated in his affidavit that appellants are entitled to have resolved the question of "the amount of damages, if any, that Seafirst is entitled to after the crediting of all payments offset by losses to TLC by Seafirst all of which TLC and your affiant will prove at trial hereon." Speakman's supplemental affidavit is identically worded. We hold this

language is insufficient under Rule 9.02 to raise a triable case of fraud. We hold the trial court did not err in granting summary judgment on Johnson and Speakman's fraud claim.

Appellants are entitled to credit against the judgment if the repossessed collateral is sold. Should they fully satisfy the judgment, the unsold repossessed collateral should be returned to them. Likewise appellants' claims of damage resulting from Seafirst's alleged negligent care of the collateral and appellant's claim of release from the guaranty based on alleged negligent care of the collateral cannot stand. We affirm the grant of summary judgment to respondent.

*Carlson's claim*

Carlson's claim is based on the statements in both his affidavit in opposition to respondent's summary judgment motion and his answer, as an affirmative defense, states simply, "[T]hat the signature, found on the guaranty * * * is not his." Carlson's is a serious claim. However, neither his affidavits nor his pleadings make any additional references to the alleged forgery of Carlson's signature on the guaranty. Carlson's signature on the guaranty is not notarized.

Minn.Stat. § 336.3–307(1) (1984) states
  Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
    (a) the burden of establishing it is on the party claiming under the signature.

■ The trial court, in factual findings accompanying its order granting summary judgment, found that Carlson executed the guaranty agreement. There is no memorandum accompanying the court's order, nor do the findings indicate how the court reached its conclusion.

However, among facts alleged in Carlson's counterclaim against Speakman and Johnson, Carlson admits signing the stock transfer agreement. In the stock transfer agreement signed by Carlson, Carlson admits signing the guaranty:
  That Ralph H. Dickenson hereby agrees to execute an individual guarantee on the

financing with Credit Alliance Corporation, and John R. Speakman and Richard A. Johnson do hereby agree to indemnify and hold Ralph H. Dickenson and George O.R. Carlson harmless with respect to any claim or loss as the result of the execution of such guarantee, and on the existing guarantee to Seafirst Corporation, and further agree to use their best efforts to obtain the removal of said guarantees on or before September 12, 1985, and in the event such removal is not obtained, then to establish, by negotiation, appropriate compensation for the continuation thereof. In the event of sale of said corporation, Ralph H. Dickenson and George O.R. Carlson shall be removed as guarantors on said obligations.

Viewing these facts in the light most favorable to Carlson, we hold that the trial court did not abuse its discretion in granting respondent's summary judgment motion on the issue of his liability for the guaranty. Carlson argues that the language in the stock transfer applies only to Dickenson. We do not agree. The plain meaning of the contract language reveals that the signers of the stock transfer agreement referred to the Seafirst guaranty executed by Carlson.

Carlson raises two additional arguments, that he was denied his right to due process under the fourteenth amendment when the trial court refused to grant him a trial, and that the guaranty agreements were not properly considered by the trial court because appellant failed to lay a proper foundation. These arguments are without merit. Moreover, Carlson is raising these issues for the first time on appeal. We reaffirm that issues not raised before the trial court will not be considered on appeal. *Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974); *Benedict v. Benedict,* 361 N.W.2d 429, 431–32 (Minn.Ct.App.1985)

## DECISION

The trial court properly granted summary judgment.

If the remaining collateral is sold, appellants are entitled to a credit against the judgment. If appellants satisfy the judgment, they are entitled to return of any unsold collateral.

We affirm.