**Herman H. BAINS, Appellant,**

v.

**PIPER, JAFFRAY & HOPWOOD, INCORPORATED, et al.,
Respondents.**

No. C4-92-1593.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Review Denied April 20, 1993.

Marcia Bains–Grebner, Eagle River, WI, for appellant.

Carol A. Peterson, Dorsey & Whitney, Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

Appellant Herman H. Bains brought an action against respondents Piper, Jaffray & Hopwood Incorporated ("PJH") and its registered representative and branch manager Charles Duddingston, seeking return of a $5,626.07 contribution made into appellant's self-directed Keogh plan, asserting that no transfer of securities occurred and the contract for the sale of securities was unenforceable under Article 8 of the Uniform Commercial Code. The trial court determined that the securities transaction involved 375 shares of uncertificated Western Union stock, the transfer of which complied with provisions of Minn.Stat. §§ 336.8–101—.8–408 (1988). Upon post-trial motions brought by both parties, the trial court permitted respondents to conform their answer to the evidence, but denied appellant's request for a new trial. We affirm.

## FACTS

While a partner in the law firm of Williamson, Bains, Moore and Hanson ("WBM & H"), appellant and other firm partners opened a self-directed Keogh plan account at PJH. Delaware Charter Guarantee & Trust Company was named trustee. Malcolm Moore, one of appellant's partners, was named the firm's "authorized partner." In this capacity, Moore served as WBM & H's representative in dealings with PJH and PJH's registered representative and branch manager Charles Duddingston.

Pursuant to the self-directed plan, appellant or his agent specified which investments to make. The plan empowered the trustee to make investments directed by the participants. While the plan required PJH to send confirmation of securities transactions made on behalf of appellant to the trustee, neither the joinder nor trust agreements contained any provision that required PJH to send confirmations directly to appellant.

When appellant made a voluntary contribution of $5,626.07 to the plan, Moore instructed Duddingston to invest this contribution in shares of Western Union 14% Cumulative Preferred stock ("Western Union"). PJH purchased 375 shares of that stock and made a book entry to record it in the account "Guarantee & Trust Co., Trustee, Williamson, Bains & Moore, For Benefit of Herman H. Bains." PJH sent a confirmation of the securities purchase and monthly statements of account to the trustee, as required by the trust agreement.

Although the purchase of the 375 shares was made in 1984, appellant contends he was not aware of the purchase until July 1985, when he was required to file a report with the Internal Revenue Service regarding his Keogh accounts. In August 1985, appellant contacted Duddingston to report that he had not received a confirmation or any statements of account from PJH. Appellant testified that at that time he demanded return of the contribution and reasonable interest. In contrast, Duddingston testified that appellant did not demand return of his contribution in August 1985 because the "stock was [then] doing well." PJH provided appellant with copies of prior account statements in August 1985.[1]

The stock had a fair market value of $4,031.25 in August 1985 and a fair market value of $5,250 in November 1985. Due to

---

1. While Duddingston apparently told appellant in August 1985 that prior confirmation and monthly account statements had, in fact, been sent to appellant, Duddingston later conceded that he did not verify the facts regarding the matter. PJH's compliance department eventually determined that appellant's account should have been coded to send duplicate confirmations and statements of account to appellant.

medical problems, appellant did not contact PJH and Duddingston about the Western Union transaction again until August 1988, when he renewed his objection that PJH had not provided him with a confirmation or monthly account statements and demanded return of his contribution.

When PJH refused to return appellant's contribution, he commenced this action in February 1989, alleging that no transfer occurred and that an enforceable contract for the sale of securities did not exist. In February 1989, the stock had a fair market value of $480.00.

## ISSUES

1. Is the trial court's finding of fact that the 375 shares of Western Union stock were uncertificated securities as defined by Minn.Stat. § 336.8–102(1)(b) (1988) clearly erroneous?

2. Did the securities transaction involve a transfer of 375 shares of Western Union stock to appellant in accordance with Minn. Stat. § 336.8–313 (1988)?

3. Did the securities transaction comply with the statute of frauds, Minn.Stat. §§ 336.8–319 (1988)?

4. Is the trial court's denial of appellant's motion to amend his complaint to include a claim for fraudulent misrepresentation and for punitive damages pursuant to Minn.Stat. § 549.20, subd. 1 (1988) within this court's scope of review, and if so, did the trial court abuse its discretion in denying appellant's motion to amend?

## ANALYSIS

■ A trial court's denial of a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn. 1981).

## I.

Appellant first argues that the trial court clearly erred in finding that the 375 shares of Western Union stock were "uncertificated securities." While PJH alleges appellant failed to preserve this issue, we note that in his motion for a new trial, appellant questioned whether sufficient evidence existed to support a finding that the shares were uncertificated. Therefore, this issue is properly before the court for review. *See Muehlstedt v. City of Lino Lakes*, 466 N.W.2d 56, 58 (Minn.App.1991).

■ Whether a security is certificated or uncertificated determines the legal requirements which must be satisfied to transfer the security to a purchaser under Minn.Stat. § 336.8–313 (1988). An "uncertificated security" is:

a share, participation, or other interest in property or an enterprise of the issuer or an obligation of the issuer which is

(i) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;

(ii) of a type commonly dealt in on securities exchanges or markets; and

(iii) either one of a class or series or by its terms divisible into a class or series of shares, participation, interests, or obligations.

Minn.Stat. § 336.8–102(1)(b) (1988). Thus, an uncertificated security is not represented by any instrument in the sense that a certificated security is represented. *See* Minn.Stat. § 336.8–102(1)(a)(i) (1988). Because it is not so represented, an uncertificated security may only exist in registered form. 8 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 8–102:15, at 36–37 (3d ed. 1985) (*"Anderson"*); *see* Minn.Stat. § 336.8–102(1)(b)(i). Registration, therefore, is essential to establish ownership of the uncertificated security. *Anderson* § 8–102:15, at 37.

The parties dispute whether the 375 shares of Western Union stock were certificated or uncertificated. In their answer, PJH and Duddingston "allege[d] that the stock *certificates* for the Western Union 14% Cumulative Preferred were held by PJH." (Emphasis added.) At trial, however, Duddingston testified that appellant's Western Union shares were uncertificated, as are the shares involved in the vast ma-

jority of securities transactions. The trial court found that "[n]o stock certificates were issued for the Western Union stock; rather, they were uncertificated shares held in street name by PJH." Appellant contends this finding is clearly erroneous. We disagree.

■■■ An appellate court reviews the factual findings of a trial court sitting without a jury under the clearly erroneous standard. Minn.R.Civ. P. 52.01; *Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307, 311 (Minn.1983). Findings of fact may be reversed if they are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prods., Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). The appellate court must give due deference to the trial court's opportunity to judge the credibility of the witnesses. *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn.1985).

■■■ Appellant did not cross-examine Duddingston at trial on the question of whether the shares of Western Union stock were certificated or uncertificated. The court determined PJH's and Duddingston's answer contained an incorrect factual statement and found Duddingston's sworn trial testimony credible. *See id.* Appellant failed to present any evidence that the shares were in fact certificated; therefore, the trial court's determination that they were uncertificated is reasonably supported by the record and not clearly erroneous. *See Northern States Power*, 304 Minn. at 201, 229 N.W.2d at 524.

## II.

■■■ Appellant next contends that the trial court erred in determining that a transfer of uncertificated securities occurred under Minn.Stat. § 336.8–313(1)(b). While we agree with appellant that a transfer did not occur under Minn.Stat. § 336.8–313(1)(b), we do hold a transfer occurred instead under Minn.Stat. § 336.8–313(1)(d)(ii).

### A.

■■■ The trial court concluded that:

PJH *registered* the Western Union stock in the name of the trustee for [appellant's] benefit, thus complying with Minn.Stat. § 336.8–313(1)(b).

(Emphasis added.) The trial court focused upon the "registration" of the stock by PJH. Our review of Article 8, however, leads us to conclude that in order for a transfer to occur under Minn.Stat. § 336.8–313(1)(b), uncertificated securities must be registered by an issuer such as Western Union.[2] A transfer of uncertificated securities does not result under Minn.Stat. § 336.8–313(1)(b) when a broker-dealer, like PJH, makes a book entry to identify the securities as belonging to the purchaser.[3]

2. Minn.Stat. § 336.8–313(1) (1988) provides:

Transfer of a security or a limited interest * * * to a purchaser occurs only:

\* \* \* \* \* \*

(b) at the time the transfer, pledge, or release of an uncertificated security is *registered* to the purchaser or a person designated by the purchaser.

(Emphasis added.) Western Union was the issuer of the shares in question and PJH was the broker. An issuer is defined as a person who:

creates shares, participations, or other interests in the property or in an enterprise * * * which shares, participations, interests or obligations are uncertificated securities.

Minn.Stat. § 336.8–201(1)(b) (1988). PJH did not create property interests in Western Union. Instead, PJH, as broker, is:

a person engaged full or part-time in the business of buying and selling securities, who in the transaction concerned acts for, buys a security from, or sells a security to, a customer.

Minn.Stat. § 336.8–303 (1988). When Moore, as authorized partner, contacted Duddingston to invest appellant's contribution by purchasing Western Union stock, Duddingston, as PJH's agent, acted as a "broker."

3. Various provisions of Article 8 support the conclusion that "registration," as used in Minn. Stat. § 336.8–313(1)(b) (1988), refers to registration by the issuer, not a book entry by a broker-dealer. *See* Minn.Stat. § 336.8–201(3) (1988) (an *issuer* is a person on whose behalf transfer books are maintained with respect to *"registration* of transfer") (emphasis added); Minn.Stat. § 336.8–207(3) (1988) ("[t]he registered owner of an uncertificated security that is subject to a registered pledge is not entitled to registration of transfer prior to the due presentment to the

■ The general rule is that a transfer of uncertificated securities occurs when the security is registered "by the issuer" to the purchaser or a person designated by him or her. *Anderson* § 8–313:19(a), at 276. Other commentators agree:

> The basic method of transferring an uncertificated security is by registration of transfer (8–313(1)(b)). Where such is the case, *the issuer* must send "written statements" of the transfer to both the transferor and transferee "within 2 business days after the transfer."

2 Thomas M. Quinn, *Uniform Commercial Code Commentary and Law Digest* ¶ 8–408(A)(3), at 8–165 (2d ed. 1991) (emphasis added) (*"Uniform Commercial Code Commentary"*).

Minn.Stat. § 336.8–408 (1988) enumerates the procedures an issuer must follow when registering the transfer of uncertificated securities and codifies for uncertificated securities notice and registration requirements similar to those for certificated securities.[4] Under Minn.Stat. § 336.8–408(1), an "issuer" must send to the new registered owner within two days after registration an "initial transaction statement" indicating the transfer of uncertificated securities has been registered.

We also conclude that PJH, not appellant, was the "registered" owner of the uncertificated securities "whose name would appear on [Western Union's] records." *See* Egon Guttman, *Modern Securities Transfers* ¶ 2.01, at 2–1–2 n. 1 (3d ed. 1987). Duddingston testified, and the court found, that PJH held the stock in its

"street name."[5] "Registration in street name involves registering the security in the name of a 'nominee' * * * or in the name of a broker-dealer, to enable 'good delivery' to be effected in accordance with market practice." *Id.*

Because this securities transaction did not involve Western Union "registering" the transfer of uncertificated securities held in street name by PJH, Minn.Stat. § 336.8–313(1)(b) does not apply. We conclude as a matter of law that Minn.Stat. § 336.8–313(1)(b) controls only the transfer of uncertificated securities registered by the issuer, not "registered" (i.e. "recorded") through a book entry in the records of a broker-dealer, as the trial court incorrectly concluded.

### B.

A transfer of securities did occur, however, in compliance with Minn.Stat. § 336.8–313(1)(d), which provides that a security transfers:

> at the time a financial intermediary, not a clearing corporation, sends the purchaser confirmation of the purchase and also by book entry or otherwise identifies as belonging to the purchaser

> \* \* \* \* \* \*

> (ii) a quantity of securities that constitute or are part of a fungible bulk of * * * uncertificated securities registered in the name of the financial intermediary.[6]

---

issuer of a release instruction") (emphasis added); Minn.Stat. § 336.8–207(4)(a) (the *issuer*, upon receiving transfer instructions from a registered pledgee, shall *register* the transfer of the security to the new owner) (emphasis added); Minn.Stat. § 336.8–401 (1988) (entitled "duty of *issuer* to *register transfer*, pledge or release") (emphasis added); Minn.Stat. § 336.8–408(1) (1988) (an *issuer* must send to a new registered owner a written statement "[w]ithin two business days after the *transfer* of an uncertificated security has been *registered*") (emphasis added). In contrast, the broker-dealer makes book entries to record the identity of the purchaser. Minn.Stat. § 336.8–313(1)(d). *The concept of a book entry by a broker, therefore, is distinct and different from registration of a transfer by an issuer.*

**4.** Minn.Stat. § 336.8–401(1) (1988) provides the procedures under which an issuer registers the transfer of certificated securities in registered form.

**5.** Securities held in the name of a broker instead of his customer's name are said to be carried in a "street name." *Fradkin v. Ernst*, 571 F.Supp. 829, 838 n. 16 (N.D.Ohio 1983); *Black's Law Dictionary* 1421–22 (6th ed. 1990).

**6.** A "financial intermediary" is a

> bank, broker, clearing corporation, or other person * * * which in the ordinary course of its business maintains security accounts for its customers and is acting in that capacity.

Minn.Stat. § 336.8–313(4) (1988).

Paragraph (d) is the basic provision for transfers effected through entries in the records of a financial intermediary. 1977 Official Code Comment 3, *reprinted in Anderson* § 8–313:14, at 270. Because PJH satisfies the definition of a broker under Minn.Stat. § 336.8–303, it is a financial intermediary for purpose of the transfer provisions of Minn.Stat. § 336.8–313(1)(d). The record supports the finding of the trial court that PJH made a book entry identifying the Western Union stock as belonging to appellant, thereby satisfying one of the two transfer requirements of Minn.Stat. § 336.8–313(1)(d).

The evidence unequivocally establishes, however, that PJH did not send confirmation of the purchase to appellant. The question, therefore, is whether PJH's act of sending confirmation of the purchase to the trustee satisfied the statutory requirement that the financial intermediary "send [ ] the purchaser confirmation of the purchase." Minn.Stat. § 336.8–313(1)(d). We conclude that it did.

The trust agreement between Guarantee & Trust Co. and appellant, the validity of which appellant does not challenge, stated:

> [PJH] is designated by [appellant] with *authority* to provide the Trustee with instructions, via confirmations or otherwise, implementing [his] directions, either directly or through [his] Employer, to [PJH] to purchase and sell securities for [appellant's] account.
>
> \* \* \* \* \* \*
>
> [PJH] \* \* \* *shall forward confirmation of purchases and sales to the trustee.*

(Emphasis added.) Under the unambiguous language of the trust agreement, appellant authorized PJH to provide the trustee with instructions and confirmation of securities transactions.

We hold, in light of the trust agreement, PJH accomplished transfer under Minn. Stat. § 336.8–313(1)(d) when it sent confirmation of the purchase to the trustee, though not to appellant as "purchaser." This conclusion does not encourage secretive or fraudulent securities transactions, as appellant contends. Only a limited number of persons, namely appellant as participant in the self-directed Keogh plan or his agent, may instruct PJH to implement investment decisions. If appellant were to claim Moore lacked authority to invest on appellant's behalf or if Moore exceeded the scope of his authority, appellant's grievance would lie against Moore, not PJH or Duddingston.

■ An appellate court will not reverse a correct decision of the trial court simply because the trial court based its conclusion on incorrect reasons. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 728 (Minn.1990). Although it inaccurately construed provisions of Article 8, the trial court reached the correct conclusion that a transfer of 375 shares of Western Union stock to appellant occurred in compliance with Minn.Stat. § 336.8–313.

### III.

Appellant argues that enforcement of the oral contract between Moore and Duddingston to purchase shares of Western Union stock with appellant's contribution is barred by the statute of frauds. *See* Minn. Stat. § 336.8–319 (1988). We disagree.

> A contract for the sale of securities is not enforceable by way of action or defense unless:
>
> (a) there is some writing signed by the party against whom enforcement is sought or by the party's authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; [or]
>
> (b) delivery of a certificated security or transfer instruction has been accepted, transfer of an *uncertificated* security has been *registered* and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable only to the extent of the delivery, registration, or payment.

Minn.Stat. § 336.8–319(a), (b) (1988) (emphasis added).

■ Under Minn.Stat. § 336.8–319(a), a contract for the sale of securities is enforceable where: (1) there is some writing; (2) that is signed by the party against whom enforcement is sought; (3) that is sufficient to indicate a contract for the sale of securities was made; (4) that states a quantity term; (5) that describes the securities; and (6) that states a price. *See Uniform Commercial Code Commentary* ¶ 8–319(A)(1), at 8–125.

■ The confirmation sent to the trustee satisfies Minn.Stat. § 336.8–319(a).[7] The computer printout is a writing, "signed" by PJH.[8] *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cole*, 457 A.2d 656, 663 (Conn.1983) (the letterhead on a confirmation notice satisfies the signature requirement); *see also Kohlmeyer & Co. v. Bowen*, 126 Ga.App. 700, 192 S.E.2d 400, 404 (1972) (printed name on letterhead satisfies the signature requirement). The confirmation clearly indicates that appellant bought 375 shares of Western Union stock at $15.00 per share, satisfying the quantity, description and price requirements of Minn.Stat. § 336.8–319(a), and is sufficient to establish the existence of a contract for the purchase of securities.

■ The statute of frauds was also satisfied under the payment exception contained in Minn.Stat. § 336.8–319(b), under which a contract for the sale of securities is enforceable where payment has been made, so long as the payment was "unequivocally referable" to the oral contract. *Cf. Newman v. Crazy Eddie, Inc.*, 119 A.D.2d 738, 501 N.Y.S.2d 398, 399 (1986) (agreement barred by statute of frauds where "alleged performance was not 'unequivocally referable' to the alleged oral agreement"). Appellant deposited $5,262.07 for the pur-

chase of Western Union stock made by PJH at Moore's direction, thus satisfying Minn.Stat. § 336.8–319(b).[9]

Because the statute of frauds was satisfied, it is unnecessary to determine whether the transaction complied with Minn.Stat. § 336.8–319(c). The trial court, therefore, did not abuse its discretion in denying appellant's motion for a new trial or for amended findings and conclusions. *See Jack Frost*, 304 N.W.2d at 352.

## IV.

■ Finally, appellant claims the trial court erred in its pretrial denial of appellant's motion to amend the complaint to include claims for fraudulent misrepresentation and punitive damages under Minn. Stat. § 549.20 (1988). However, this issue is not properly before this court. Appellant did not appeal the judgment of dismissal. He appealed, instead, from the order denying a new trial. "An appeal from an order denying a new trial brings up for review only the errors occurring *during* trial which were raised in the motion, and it does not present orders made *prior* to trial." *Muehlstedt*, 466 N.W.2d at 58 (emphasis in original). Appellant failed to preserve the issue of the trial court's refusal to permit amendment of the complaint during trial or in the motion for a new trial. We conclude, therefore, that appellant has not properly preserved the issue for review. *See id.*

■ Even if we were to address the issue on its merits, we would affirm the trial court's denial of the motion to amend. There is no abuse of discretion in denying a motion to amend where a party seeking the amendment cannot maintain the claim. *See*

---

**7.** The statute of frauds contains no requirement that the writing be sent directly to the purchaser.

**8.** Minn.Stat. § 336.1–201(39) (1988) defines "signed" as including any symbol executed or adopted by a party with present intention to authenticate a writing.

**9.** Contrary to the trial court's conclusion, failure of appellant to object in writing within 10 days after receiving an initial transaction statement confirming registration of an uncertificated se-

curity did not satisfy the statute of frauds exception set forth in Minn.Stat. § 336.8–319(b) (1988). This statute of frauds provision applies to issuers registering uncertificated securities. Here, no initial transaction statement was ever sent by the "issuer" in accordance with Minn. Stat. § 336.8–408 (1988). Therefore, it was impossible for appellant to send written objection to the initial transaction statement which confirmed the registration of the uncertificated security by the issuer.

*Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 226 (Minn.1982).

 To succeed on a claim of fraudulent misrepresentation, a party must prove:

> (1) there was a false representation by a party of a past or existing material fact suspectable of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 532 (Minn.1986).

The amended complaint failed to demonstrate a causal connection between statements made by PJH and Duddingston and damages suffered by appellant. Appellant, therefore, failed to plead the claim with particularity as required by Minn.R.Civ.P. 9.02. *See Seafirst Commercial Corp. v. Speakman,* 384 N.W.2d 895, 899 (Minn. App.1986) (all elements of a fraud claim must be pleaded). The trial court did not abuse its discretion in denying the motion to amend to include fraudulent misrepresentation. *See Utecht v. Shopko Dep't Store,* 324 N.W.2d 652, 654 (Minn.1982) (whether to allow an amendment to a complaint rests in the discretion of the trial court).

 The trial court also properly found no factual basis to allow appellant to amend his complaint to claim punitive damages.

> Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

Minn.Stat. § 549.20.

Appellant's reliance upon the inconsistencies between PJH and Duddingston's answer and their trial testimony is misplaced. The amended complaint and the affidavit filed in support of appellant's motion do not establish a factual basis to conclude PJH had acted with willful indifference under Minn.Stat. § 549.20.

## DECISION

The trial court did not abuse its discretion in denying appellant's motion for a new trial or for amended findings and conclusions. Although a transfer of securities did not occur under Minn.Stat. § 336.8–313(1)(b), a transfer did occur in accordance with Minn.Stat. § 336.8–313(1)(d)(ii). The transaction also satisfied the statute of frauds, Minn.Stat. § 336.8–319. The issue of whether the trial court abused its discretion in denying appellant's pretrial motion to amend the complaint has not been preserved for review on appeal.

Affirmed.