**Ronald Leroy GRAY, Appellant,**

v.

**Gary J. FRENCH, et al., Respondents.**

**No. C6–86–629.**

Court of Appeals of Minnesota.

Nov. 4, 1986.

Bruce W. Okney, Minneapolis, for appellant.

Gary J. French, Minneapolis, pro se.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Ronald Gray sued respondents Gary and Joyce French to recover two months' rent under a lease and purchase agreement for a home (Drew Avenue property) appellant was selling to respondents. Respondents counterclaimed for damages, alleging that appellant breached the purchase agreement, misrepresented the balance due on the mortgage, and that those actions of appellant caused them to lose the equity in their own home.

Respondents' claimed damages include lost equity in their Lee Avenue home (Lee Avenue property). They lost their home when they decided to stop making their contract for deed payments because they believed they were buying appellant's home. On January 13, 1986, following a jury trial, the trial court granted respondents a judgment of $6,736.37.

Appellant claims the jury and the trial court erroneously calculated respondents' lost equity in the Lee Avenue property. He contends that respondents' damages, if any, should be reduced by the amount of the real estate commission they would have

incurred had they actually sold the Lee Avenue house. Appellant also claims that prejudicial conduct of respondents' counsel entitles him to a new trial. We affirm.

## FACTS

On November 10, 1984, respondents entered into an agreement to lease and, following the lease period, purchase appellant's Drew Avenue property. Respondents agreed to rent the Drew Avenue property from November 10, 1984, until March 1, 1985, at the rate of $440 for November and $650 for each month thereafter. Appellant represented to respondents that the home was encumbered by a non-qualifying, assumable $85,000 mortgage.

Under the terms of the agreement, respondents agreed to pay $91,000 for the property. That figure consisted of $1000 earnest money, $2500 cash payable at closing, assumption of a mortgage of approximately $85,600, and a $2000 contract for deed payable to appellant. The parties agreed to a spring closing date to allow respondents time to sell their Lee Avenue home.

After the purchase agreement was signed, but prior to the closing date, respondents gave appellant a $1000 earnest money check postdated to April 1, 1985. The parties agreed that respondents would not stop payment on the check and that appellant would not cash the check until April 1, 1985, or closing, whichever occurred first.

Respondents moved in at the end of December 1984 and remained there until the end of April 1985. They made the November, December, January, and February rent payments, but failed to pay the March and April rent, a total of $1300.

In March 1985 appellant and respondent Gary French discussed the sale of the Drew Avenue property. The parties disagree as to the content of that discussion. Respondents claim appellant told them he could not go through with the sale because he was $10,000 in arrears on his mortgage and was unable to make arrangements with the lending institution to bring the payments current. Appellant claims respondents told him that they were financially unable to complete the purchase of the Drew Avenue property, and that is why the sale fell through. Although the exact reason is disputed, the sale was never completed.

After the parties had signed the lease and purchase agreement, respondents hired a real estate agent and unsuccessfully attempted to sell their Lee Avenue home. Respondents' home was encumbered with a contract for deed, naming Tim Steinhelber as vendor. This contract required respondents to make two monthly payments, one to Steinhelber and the second to a mortgage company. Respondents owed approximately $8300 on the contract for deed and $45,000 on the mortgage. In November or December 1984, respondents stopped making payments on both the contract for deed and the mortgage so they could accumulate funds to purchase the Drew Avenue property. Respondents stopped making those payments knowing that this would put them into default with Steinhelber but made the decision, they claim, in good faith based on the upcoming purchase of appellant's property. They were willing to give up their equity in their own home based on their expectations of being able to purchase appellant's. As expected, Steinhelber cancelled respondents' contract and later resold the property for $62,000.

Meanwhile, appellant sued respondents for the unpaid March and April rent on his home. Respondents counterclaimed that appellant had breached the purchase agreement and defrauded them by entering the agreement knowing he could not honor its terms. They also alleged appellant fraudulently misrepresented the balance due on the mortgage.

A jury found that appellant had misrepresented the balance due on his Drew Avenue property mortgage and that he had unreasonably terminated the purchase agreement. It also found that respondents would not have given up their interest in

their home on Lee Avenue had they been aware of appellant's misrepresentation of the unpaid mortgage balance. The jury calculated respondents' damages at $9902. This figure was offset by the $1300 respondents owed appellant for rent.

The jury apportioned respondents' $9902 verdict as follows: $8500 lost equity in the Lee Avenue property [1], $1000 moving expenses, $80 cleaning expenses, $64 phone expense, and $258 in educational expenses for keeping their children in the same school district in May and June 1985.

Appellant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Respondents moved for amended findings. On December 17, 1985, the trial court denied each motion but reduced respondents' damages by $2000. The court concluded that the jury had overstated the lost equity figure by $2000 due to its failure to offset total equity by the amount respondents saved by intentionally not making payments on their Lee Avenue home. On January 13, 1986, the court entered a judgment against appellant for $6,736.37, including interest.

Ronald Gray appeals from the January 13 judgment. Respondent did not file a brief and this matter proceeds pursuant to Minn.R.Civ.App.P. 142.03.

### ISSUES

1. Did the trial court miscalculate respondents' lost equity in the Lee Avenue property?

2. Is appellant entitled to a new trial based on alleged prejudicial conduct of respondents' counsel?

### ANALYSIS

#### I.

*Damage Calculation*

■ Appellant claims the trial court erred when it calculated respondents' equi-

ty in their property by failing to include an offset for whatever realtor's commission they would have incurred had they actually sold the property.

Appellant introduced no evidence of the amount of commission respondents would have incurred had they sold the property. Moreover, appellant did not request such an offset, nor did he propose a similar jury instruction.

The evidence does not support a finding that respondents would have sold their Lee Avenue property and incurred a realtor's commission had they known appellant was in arrears on his mortgage. When the sale fell through, respondents neither sold the Lee Avenue property nor incurred any realtor's commission. Instead, they lost their equity as a result of the cancellation of the contract for deed. We cannot say that the trial court erred in calculating respondents' damages.

#### II.

*Prejudicial Conduct*

■ Appellant claims he is entitled to a new trial because respondents' counsel's conduct prejudiced his case and tainted the jury's verdict. He claims respondent's argumentative opening statement made improper references to the foreclosure on his Drew Avenue property. Appellant also claims respondents' counsel improperly asked witnesses leading questions on important issues of the case. Appellant claims this improper questioning necessitated many objections and interruptions which negatively prejudiced the jury against appellant.

Granting a new trial based on claimed misconduct of counsel is within the discretion of the trial court. We will not reverse the trial court unless it clearly abuses its

---

1. The trial court's finding of fact number 5(a) states the $8500 lost equity award was for the Drew Avenue property. However, a review of the record, appellant's brief, the trial court's order for amended findings, and order for judgment dated December 17, 1985, and the accompanying memorandum indicate the award was for equity lost from respondents' Lee Avenue property. It is not disputed that the lost equity figure was calculated on respondents' Lee Avenue home, not any property on Drew Avenue.

discretion or unless the conduct "was so prejudicial that it would be unjust to allow the result to stand." *Jack Frost, Inc. v. Engineered Building Components Co., Inc.*, 304 N.W.2d 346, 352 (Minn.1981) (citing *Goblirsch v. Western Land Roller Co.*, 310 Minn. 471, 474, 246 N.W.2d 687, 689 (1976)).

We agree that respondents' opening statement was objectionable and the leading questions were improper. However, we conclude the conduct does not warrant a new trial. Appellant concedes that respondents' counsel's conduct was unintentional and a result of inexperience. Moreover, the trial court sustained many of appellant's objections. We hold that the trial court did not abuse its discretion by denying appellant's request for a new trial.

## DECISION

Respondents' damages were properly calculated. The trial court did not abuse its discretion by denying appellant's motion for a new trial.

Affirmed.