# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-3467

_____

PACK Private Capital, LLC

*Plaintiff - Appellant*

v.

Associated Bank, N.A.; James B. Fink; Rodney Murray; Michael Waltz

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 12, 2025
Filed: October 10, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

PACK Private Capital, LLC, an investment company, loaned money to Silver Fox Energy, LLC, a North Dakota-based energy construction company, starting in September 2021. Silver Fox had cash flow problems, so PACK gave Silver Fox additional short-term loans, called "payroll float loans." The understanding was that Silver Fox would repay PACK for these loans "as soon as its accounts receivable

became available." There was typically no documentation of or interest on the payroll float loans.

In October 2021, Associated Bank, N.A. agreed to provide Silver Fox with a $2 million revolving line of credit and a $1 million term loan. As part of the deal, PACK signed a subordination agreement, agreeing to subordinate all of Silver Fox's "obligations" to PACK "now existing or hereafter arising, direct or indirect, absolute or contingent, joint or several" to Associated's line of credit and loan. Any collection of payment by PACK required Associated's "prior written consent."

PACK continued to provide payroll float loans into 2022. PACK and Silver Fox refinanced and consolidated their debt in March 2022. Two months later, PACK converted its debt into Silver Fox equity, giving it a 90% ownership stake. Associated agreed to refinance and replace the earlier loan with a $4 million revolving line of credit and a $1.5 million term loan. PACK provided a $1 million guaranty to Associated. Despite the financing, Silver Fox continued to struggle and PACK continued to make payroll float loans.

Associated denied Silver Fox's request for more funding in July 2022. On August 11, 2022, James Fink, an Associated employee who had been involved in the initial discussions with Silver Fox and PACK, sent a letter "acknowledg[ing]" that the payroll float loan was "intended to be a 'temporary loan to bridge a cash shortfall'" that Silver Fox would soon pay back. Neither Fink nor Associated objected to these payments. PACK continued to make "unplanned" and "temporary injections" of cash, providing an additional $4.6 million in payroll float loans after Associated denied funding. Silver Fox made partial repayments on the loans.

Associated sued PACK, as guarantor, and Silver Fox, as borrower, in Minnesota court. PACK then filed this case, also in state court, and Associated removed to federal court. PACK sought a declaration that Associated had waived its rights under the subordination agreement and that PACK's payroll float loans had priority over Associated's credit and loan agreements. PACK also argued that

Associated should be equitably estopped from seeking recovery of the payroll float loan repayments because Associated approved of and encouraged PACK to make the loans. [1]

In its order of dismissal, the district court[2] held that Minnesota's credit agreement statute of frauds applied, Minn. Stat. § 513.33. The court explained that PACK's claims were based on Associated's oral promises and that equitable estoppel did not save them because PACK—in effect—sought to "enforce an oral agreement not to subordinate certain payments under the agreement, which would qualify as a modification of the agreement."

PACK appeals, arguing that Associated either gave written consent to the repayment of the payroll float loans in Fink's August 11 letter or should be equitably estopped from arguing that repayment of the payroll float loans breached the subordination agreement. We review the district court's decision to grant the motion to dismiss *de novo*, accepting the well-pled allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021).

PACK forfeited its written consent argument. *See Dreith v. City of St. Louis*, 55 F.4th 1145, 1149 (8th Cir. 2022). The complaint alleged that "Associated expressly acknowledged [receipt of PACK's financials] in writing via a letter from James Fink" on August 11, 2022 and that the letter "admits that Associated knew and encouraged PACK to continue" the payroll float loans. But PACK neither cited nor relied on the subordination agreement's prior written consent carveout. It did not argue written consent in its brief opposing the motion to dismiss or during oral argument. PACK only argued that Minnesota's credit agreement statute of frauds did not apply to the subordination agreement and that PACK was not a debtor.

---

[1]PACK's motion to take judicial notice of a complaint Associated filed in a new action in Minnesota state court is denied.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

The district court did not address written consent because PACK never raised it. *See Pub. Water Supply Dist. No. 3 v. City of Lebanon*, 605 F.3d 511, 524 (8th Cir. 2010) ("The district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised." (citation omitted)). Nor was written consent encompassed in the arguments made below. We will not allow PACK to use Fink's letter in a way that "is materially different from [its] usage and argument" before the district court. *See Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1139 (8th Cir. 2015).

PACK also argues that the district court incorrectly treated its equitable estoppel defense as a promissory estoppel claim. But the district court addressed equitable estoppel and said in a footnote that the claim "may be more appropriately viewed as a promissory estoppel claim." And, as the district court reasoned, although Minnesota's credit agreement statute of frauds does not always bar equitable estoppel, *see Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014), it does here because PACK sought to enforce "an alleged oral promise for modification" of a credit agreement, *Sovis v. Bank of N.Y. Mellon*, No. 11-2253, 2012 WL 733758, at \*3 n.3 (D. Minn. Mar. 6, 2012); *see also Schumacher v. KMLE, Inc.*, No. 52-CV-16-553, 2020 WL 54560, at \*6 (Minn. Ct. App. Jan. 6, 2020) (unpublished). In Minnesota, "no action on a credit agreement may be maintained unless the writing requirement is satisfied." *Figgins v. Wilcox*, 879 N.W.2d 653, 659 (Minn. 2016) (citing Minn. Stat. § 513.33). "There is simply no textual basis for creating an exception to [Minnesota's statute of frauds] for promissory estoppel claims." *Id.* The same logic applies here to PACK's equitable estoppel claim. *See Schumacher*, 2020 WL 54560, at \*6; *see also Figgins*, 879 N.W.2d at 658–59 (rejecting general principle that the doctrines of promissory and equitable estoppel are exceptions to Minnesota's statute of frauds).

Finally, PACK asks that we remand with instructions to allow leave to amend its complaint or to dismiss without prejudice. PACK did not move for leave to

-4-

amend the complaint, as Federal Rule of Civil Procedure 15(a) requires. Although we have said that the failure to file a formal motion "is not necessarily fatal," *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 2009), we have also held that "[a] district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules," *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009).

Nor does the amended complaint save PACK's claims. *See Pet Quarters, Inc. v. Depository Tr. and Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (district court did not abuse its discretion "in concluding that amendment would be futile and in dismissing with prejudice" where plaintiff did not "indicate[] how it would make the complaint viable"). Although the amended complaint added the word "consent[]," it did not "indicate[] how [the amendment] would make the complaint viable" and did not plead the "written consent" carveout. *Id.* Instead, PACK focused on the same arguments raised below.

Affirmed.

_____